970 F.2d 1461
 140 L.R.R.M. (BNA) 2904, 122 Lab.Cas. P 10,269
 Donald L. BLACK, Plaintiff-Appellee, Plaintiff-Appellant (90-6278),
v.
RYDER/P.I.E. NATIONWIDE, INC.; Southern Conference of
Teamsters; International Brotherhood of
Teamsters, Chauffeurs, Warehousemen &
Helpers of America, Defendants,
Teamsters Local # 519; Joint Council # 87 of the
International Brotherhood of Teamsters,
Chauffeurs, Warehousemen & Helpers of
America, Defendants-Appellants (90-6219),
Ryder/P.I.E. Nationwide, Inc.; Teamsters Local # 519;
Joint Council # 87 of the International
Brotherhood of Teamsters, Chauffeurs,
Warehousemen & and Helpers of
America, Defendants-Appellees.
 Nos. 90-6219, 90-6278.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 26, 1992.
Decided July 14, 1992.
Rehearing and Rehearing En Banc
Denied Sept. 22, 1992.
 
 Paul A. Levy (argued and briefed), Public Citizen Litigation Group, Washington, D.C., Peter Alliman, Lee, Alliman & Carson, Madisonville, Tenn., and Authur L. Fox, II, Kator, Scott & Heller, Washington, D.C., for plaintiff.
 Cecil D. Branstetter (briefed), Jane B. Stranch (argued and briefed), Branstetter, Kilgore, Stranch & Jennings, Nashville, Tenn., Howard H. Vogel, O'Neil, Parker & Williamson, Knoxville, Tenn., Peter Reed Corbin, Corbin & Dickinson, Jacksonville, Fla., John Paul Jones, Clearwater, Fla., and G. William Baab, Mullinax, Wells, Baab & Cloutman, Dallas, Tex., for defendants.
 Before: NELSON and BOGGS, Circuit Judges; and WELLFORD, Senior Circuit Judge.
 BOGGS, Circuit Judge.
 
 
 1
 This appeal involves a claim brought by Donald Black against Teamsters Local 519 and Teamsters Joint Council 87, pursuant to the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 411. Black organized and participated in protesting against the leadership of Local 519 at the local union hall. Some of the picketers engaged in violent and threatening behavior at the hall. Local 519 ultimately brought charges against Black for violating the Teamsters Constitution. Teamsters Joint Council 87 convicted Black of those charges and punished him accordingly.
 
 
 2
 Black then filed this suit, alleging that various union bodies had retaliated against him for exercising his free speech rights, in violation of § 411. The jury found in favor of Black, and rendered a verdict of $40,000 against Local 519 and of $25,000 against Joint Council 87. The district court then denied the defendants' motion for Judgment Notwithstanding the Verdict. The court also denied Black's motion for attorney's fees.
 
 
 3
 Joint Council 87 and Local 519 appeal the merits of Black's § 411 claim. Black appeals the denial of his motion for attorney's fees. The appeals have been consolidated. For the reasons given below, we affirm the court's denial of Black's motion for attorney's fees. We also affirm the court's judgment with respect to the $40,000 verdict against Local 519. However, we reverse the district court's judgment with respect to the $25,000 verdict against Joint Council 87.
 
 
 4
 * Prior to November 26, 1984, plaintiff Black was a truck driver for Ryder/P.I.E. Nationwide, Inc., and a member of Teamsters Local 519 in Knoxville, Tennessee. Black had been an active leader in a movement against the leadership of Local 519 by some members of the union. Black and his cohorts were attempting to make Local 519 more democratic in its dealings with the membership and, to end corruption within the Local. They were also involved in several other contentious problems involving Local 519. This dissension within Local 519 culminated in the establishment of a picket line around the local union hall on July 30-31 and August 13-14, 1984. Black's § 411 claim arose from the union's response to that picketing. More precisely, the action centers on the union's punishment of Black for leading and participating in the picketing.
 
 
 5
 Black and others testified that their reason for picketing the union hall was to bring the corruption of the Local 519 leadership to the attention of the International Union. The picketers contended that the incumbent local union officials misused union funds, used a scheduling device for laid-off union members, known as the out-of-work book, to reward their political friends and punish their political enemies, and were guilty of a variety of other types of misconduct and illegal activities. Black's active participation put him in conflict with the local leadership and with other Teamsters bodies. Black's decision to run for President of Local 519 only made matters worse.
 
 
 6
 On the morning of July 30, 1984, Black and other protesters gathered at the union hall and established a picket line and a protest group outside the hall. Many of the protesters parked their cars directly in front of the union hall. Jimmy Metts, the business agent for Local 519, was the first union official to come to work that day. As Metts drove up, several picketers, including Black, approached his car. The picketers told Metts that he was part of the problem in the local union. Metts left immediately and no other official returned to the hall that day. The picket line continued through the day and overnight.
 
 
 7
 On the morning of July 31, Alan Sharp, a union member, went to the hall to turn in some insurance papers. As he approached the hall, some unidentified picketers knocked him down. While Sharp was on the ground, several of the picketers kicked him and slapped him. That morning, local union officials went to court to obtain a restraining order against the picketers. Local 519 officers filed a complaint against the picketers, alleging that they had engaged in concerted action to prevent the officers and others from coming to the union business office and did so in a manner calculated to place the officers in fear for their personal safety. The Tennessee Chancery Court issued the restraining order and the picketers were required to leave the union hall. Black was not mentioned by name in the restraining order.
 
 
 8
 When the officers later tried to enter the union office, they found that some sort of glue or liquid metal had been poured into the locks on every door, making it impossible to enter the union hall. A locksmith had to be called to open the doors. At a later hearing, the Chancery Court made the temporary restraining order permanent. The order restrained the protestors from coming to the union hall for the purpose of blocking access to the union office or harassing members or officers.
 
 
 9
 After the TRO was made permanent, Black posted a notice calling for another protest at the union hall to begin on August 13. The picketers asked people not to cross their picket line. The local union officials claim that on the first day of the picket, protestors threatened a mother and her young son. Allegedly, an unidentified man with a knife and a whittling stick told the woman that it would be better if she did not enter the union hall, obviously attempting to intimidate her by prominently displaying his knife. The woman left without entering the hall.
 
 
 10
 The defendants also allege that the protestors threatened other people and kept them from entering the union hall. For instance, an attorney, Phillip Lawson, came to transact business with the local union on August 14. Lawson testified that the following exchange with a picketer took place when he tried to enter the hall:
 
 
 11
 Angry picketer: "Don't you recognize a fucking picket line?"
 
 
 12
 Lawson: "I've got some business to conduct with the local."Picketer: "Well, I've got some fucking business to conduct with you."
 
 
 13
 The protestors were also allegedly carrying sticks and congregating around the cars of those who attempted to enter the union hall.
 
 
 14
 Following these events, the Executive Board of Local 519 brought charges against Black and the other protestors for their conduct during the four days of picketing, which allegedly interfered with union business. The Executive Board charged the group with violating the Teamsters Constitution by engaging in conduct that is "disruptive of, or interferes with, or induces others to disrupt or interfere with the performance of any union's legal or contractual obligations." Teamsters Constitution, Article XIX, 6(b)(5). The protestors were also charged with "[d]isruption of union meetings, or assaulting or provoking assault on fellow members or officers, or failing to follow the rules of order or rulings of the presiding officer at meetings of the local Union or any similar conduct in, or about, the union premises or places used to conduct union business." Article XIX, 6(b)(6).
 
 
 15
 Since the entire Executive Board of the Local Union wanted to bring charges against the picketers, the hearing on the charges was held before the next higher Teamster body, Joint Council 87. The hearing was held on September 14 and October 4, 1984, and a full transcript of the hearing was made. Black and the other picketers were convicted of both violations. They were suspended from the union for six months and fined $150. Black's fine was subsequently waived and he was reinstated to membership in Local 519 without making payment. (The year after this action was filed, the local union officers were voted out of office and the new leadership rescinded all formal discipline that had been imposed on Black.)
 
 
 16
 Black appealed the Joint Council's ruling to the Teamster's General Executive Board. The only issue raised on appeal was the protestors' contention that they were simply disseminating information in front of the local union hall and that their activity was therefore protected by § 101(a)(2) of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(2). The General Executive Board, however, affirmed the findings of the Joint Council.
 
 
 17
 In addition to this disciplinary action taken by the local union officials and the Joint Council, Black claims that the local officials also took other retaliatory action against him because of his participation in the picketing. Black was discharged from his job at Ryder in November 1984. The discharge was unrelated to Black's union activity. Black signed the out-of-work book at the local union hall approximately one month after his discharge from Ryder. The out-of-work book was a listing of all laid-off or discharged union workers kept by Local 519. The book listed union members in order of priority for job referrals by the union as jobs became available.
 
 
 18
 The local leadership called Black and sent him to work at a new job in 1985. The new job involved heavy physical labor, and Black ultimately injured his back and was forced to remain out of work for some time. Black claims that the union leadership sent him on the job knowing that he was in poor physical condition and unable to do the heavy lifting and other strenuous activity required by the position. When Black asked about the job before he took it, the local union president assured him that it would involve no heavy labor. Also, both Black and his son received calls for these same jobs within ten minutes of each other, even though there were fifty to seventy names between them on the ordered referral list in the out-of-work book. Black argues that the local officials used the referral to get back at him and his son for their outspoken opposition. As a result of his injury, Black filed for workers' compensation and received a settlement of approximately $10,000.
 
 
 19
 Black originally filed this action against Ryder/P.I.E., Local 519, Joint Council 87, and the Southern Conference of Teamsters. Black had several different causes of action. He brought a hybrid § 301 unfair labor practice/fair representation claim against Ryder and Local 519. He brought another claim against Local 519 and Joint Council 87 pursuant to 29 U.S.C. § 411. On December 22, 1988, the district court severed the two causes of action. The § 301 claim proceeded to a non-jury trial. At the close of evidence, the district court granted the defendant's motion for dismissal. That case is not involved in this appeal.
 
 
 20
 This appeal involves only the § 411 claim brought against Local 519 and Joint Council 87. Black brought this lawsuit claiming that all of his picketing activity is protected by § 411. He contends that he peacefully picketed the union hall for the sole purpose of informing other union members of the corrupt local leadership. Black claims that the local officials brought disciplinary charges against him only after he decided to run for President of Local 519. Black's union conviction on the two charges made it impossible for him to run for union office, to speak out at meetings, or to participate fully in the movement to rid the local union of corruption. Black denies that he personally engaged in any violence or that he made threats or forcibly kept anyone from entering the union hall.
 
 
 21
 The first trial in this matter resulted in a jury verdict for Black. However, after the verdict, the district court granted the defendants' motion for a new trial. At the second trial, a jury once again rendered a verdict in favor of Black. The jury awarded Black $30,000 in compensatory damages and $10,000 in punitive damages against Local 519, and $20,000 in compensatory damages and $5,000 in punitive damages against Joint Council 87. The district court denied the defendants' motion for JNOV. The district court also denied Black's motion for attorney's fees, holding that the fees were precluded by Shimman v. International Union of Operating Engineers, Local 18, 744 F.2d 1226 (6th Cir.1984), cert. denied, 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985).
 
 
 22
 Local 519 and Joint Council 87 argue that the district court erred in refusing to grant their motion for JNOV. The defendants contend that the district court applied improper legal standards and misled the jury. Black responds that the court applied the proper standard under § 411. He further argues that the jury simply chose to credit his version of the facts in this case. He claims that the evidence presented by the union failed to show his active participation in unprotected activity. At best, claims Black, the evidence shows that he sponsored a picket during which some others may have engaged in inappropriate activity, for which they could have been punished. Further, Black contends that the district court erred when it refused to award him attorney's fees. We discuss the various objections to the rulings of the district court in turn.
 
 II
 
 23
 The Labor-Management Reporting and Disclosure Act grew out of the McClellan Committee's investigations of autocracy and corruption in the labor movement in the late 1950s. The Congressional committee uncovered many ways in which corrupt leaders had dominated unions and remained unaccountable to their members. S.Rep. No. 187, 86th Cong., 1st Sess. 2 (1959), reprinted in U.S.Code Cong. & Admin.News 1959, p. 2318. Congress passed Title I of the LMRDA in order to ensure truly democratic unions, in which policies were formulated and adopted after open debate and criticism. The legislation was also intended to make previously-insulated union leaders accountable to the membership. "The pervading premise ... is that there should be full and active participation of the rank and file in the affairs of the union." American Federation of Musicians v. Wittstein, 379 U.S. 171, 182-83, 85 S.Ct. 300, 306-07, 13 L.Ed.2d 214 (1964). "Title I of the Act therefore establishes a 'Bill of Rights' that ensures, for example, a union member's right of free speech and right to sue or otherwise participate in legal proceedings against the union. A union official may not be dismissed for exercising these rights." Lamb v. Miller, 660 F.2d 792, 794 (D.C.Cir.1981) (footnote omitted).
 
 
 24
 At issue in this case is 29 U.S.C. § 411(a)(2), which provides as follows:
 
 
 25
 Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.
 
 
 26
 The jury found that the actions taken by Local 519 and Joint Council 87 against Black violated this provision.
 
 
 27
 Black's § 411 claim presented the jury with a question of fact concerning whether the union's action against Black was proper or if it was in retaliation for his exercise of his right to free speech. The district court ruled that under the LMRDA, this question should be decided by the trier of fact de novo, rather than under a standard of review that is deferential to the union charged with the misconduct. The defendants now challenge the de novo standard of review applied by the district court in this case. In addition, the district court allowed the jury to employ a burden-shifting analysis much like the standard used in Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), in deciding whether the union's disciplinary action was motivated by a desire to suppress protected speech. The defendants also challenge the district court's use of this standard.
 
 
 28
 Black argued that the local union violated § 411(a)(2) by bringing charges against him for participating in the picket line; that Joint Council 87 violated § 411 by finding him guilty of the charges and punishing him; and that the local violated the statute when it retaliated against him through its use of the out-of-work book. The defendants argue that Black improperly presented this case as a first amendment case. They contend that Congress intended § 411 to grant the specified rights only when such rights are exercised in accordance with the reasonable rules of the union.
 
 
 29
 As stated, the union's first argument is that the district court should not have allowed the jury to conduct a de novo review of the union's determination in this case. Local 519 and Joint Council 87 argue that when a union member is disciplined for violating a reasonable rule, the discipline is proper if it simply complies with the specific due process rights listed in § 411. Section 411(a)(5) specifies that a union member must be served with specific charges, given a reasonable time to prepare a defense, and afforded a full and fair hearing. The defendants rely on International Bhd. of Boilermakers v. Hardeman, 401 U.S. 233, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971), which dealt with the proper standard for determining whether a union has afforded the accused member a full and fair hearing on the charges against him. The Boilermakers court held that in reviewing the procedural sufficiency of such a case under § 411, a court should not substitute its judgment for that of the union, but only examine whether the union provided "some evidence at the disciplinary hearing to support the charges made." Id. at 246, 91 S.Ct. at 617 (footnote omitted). Local 519 and Joint Council 87 argue that this "some evidence" standard was the appropriate one in this case, and the district court should not have conducted a de novo review of the union's action against Black.
 
 
 30
 Black argues that the standard rule followed by courts when evaluating a union member's claim that he has been subjected to discipline or other adverse action because of free speech activities is to evaluate the evidence of the union's motivation de novo, based on a preponderance of the evidence presented at trial. See, e.g., Petramale v. Local 17 of Laborers Int'l Union of N. Am., 736 F.2d 13, 18 (2d Cir.), cert. denied, 469 U.S. 1087, 105 S.Ct. 593, 83 L.Ed.2d 702 (1984). Black contends that the defendants' reliance on the Boilermakers case is misplaced. In that case, the union member had been charged with punching a union officer, and the question was whether, in imposing discipline for this action, the union had violated the due process provision of the LMRDA, 29 U.S.C. § 411(a)(5). The Boilermakers court held that although the due process provisions required some judicial review, such review would be limited to deciding whether there was "some evidence" supporting the charges.
 
 
 31
 In Boilermakers, however, no claim was raised under the free speech provision of the LMRDA. As the Supreme Court has repeatedly made clear, the free speech and due process provisions of the Act are separate and independent. Sheet Metal Workers' International Ass'n v. Lynn, 488 U.S. 347, 354-55, 109 S.Ct. 639, 644-45, 102 L.Ed.2d 700 (1989). A union may not infringe on free speech rights under § 411(a)(2), even if it abides by all of the due process provisions when disciplining a member for protected activity. 29 U.S.C. § 411. Boilermakers does not apply here because that case did not involve a free speech issue.
 
 
 32
 Other courts have also rejected the claim that the "some evidence" standard applies in cases such as this. In Bise v. IBEW Local 1969, 618 F.2d 1299 (9th Cir.1979), cert. denied, 449 U.S. 904, 101 S.Ct. 279, 66 L.Ed.2d 136 (1980), for example, the court expressly rejected the argument that the "some evidence" standard applied to cases involving discipline for activity protected under § 411(a)(2). The court stated:
 
 
 33
 We are unimpressed by the Union's argument that judicial review of the intra-union proceedings is precluded since the disciplinary actions taken against the plaintiffs were supported by "some evidence" of guilt. The Union's reliance on International Brotherhood of Boilermakers v. Hardeman, 401 U.S. 233, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971), is misplaced. Unlike the question presented in Hardeman, the infirmity is not in the procedure used or the method of discipline, but in the fact that the discipline is being imposed for an improper purpose. To adopt the Union's reading of Hardeman would have the effect of "insulat[ing] any Union discipline of a member, so long as the charges brought against him are supported by 'some evidence', no matter how insubstantial or suspicious that evidence might be." NLRB v. Local 294, International Brotherhood of Teamsters, [ ] 470 F.2d [57, 62 (2nd Cir.1972) ]. We will not adopt such a reading.
 
 
 34
 . . . . .
 
 
 35
 ... Hardeman did not involve freedom of speech or assembly. While we must respect the congressional judgment of judicial noninterference in the internal affairs of unions, we must also not forget the special need to protect individual members against the danger of overreaching by entrenched union leadership.
 
 
 36
 Bise, 618 F.2d at 1304-05 n. 5.
 
 
 37
 We accept and adopt the same reasoning in this case. Hardeman involved the due process provisions of the LMRDA, and this case deals with the free speech and assembly guarantees of the act. See Kuebler v. Cleveland Lithographers & Photoengravers Union Local 24-P, 473 F.2d 359, 362 (6th Cir.1973). While the "some evidence" standard applies when reviewing a union's decision for procedural sufficiency, this deferential standard cannot apply to cases concerning the free speech guarantees of the LMRDA if those protections are to mean anything. See also Petramale, 736 F.2d at 18; Bradford v. Textile Workers Local 1093, 563 F.2d 1138 (4th Cir.1977).
 
 
 38
 Local 519 and Joint Council 87 also cite Mayle v. Laborers Int'l Union, Local 1015, 866 F.2d 144 (6th Cir.1988), to support their argument that the "some evidence" standard should apply here. However, the Mayle case involved a "dual union" issue. In that case, Mayle sought the protection of § 411(a)(2) for statements that he had made in forming a rival union. The court held, correctly, that the statements were not protected by § 411(a)(2), since the statute "permits the expulsion of any member who attempts to threaten the union as an institution." Id. at 146. In this case, however, Black was not attempting to destroy his union nor was he threatening the existence of his local. On the contrary, he was seeking to expose, and ultimately to expel democratically, the current leadership of his local, in an effort to improve his union. This activity is at the heart of the purpose of § 411(a)(2), and Black's speech, if peaceful, is protected by that section. Mayle is inapposite. We therefore affirm the district court's use of a de novo standard of review of the union's action in this case.
 
 III
 
 39
 The next argument advanced by the defendants is that the district court erred when it instructed the jury that once the plaintiff had proven that his exercise of protected speech played a substantial role in the actions taken against him, the burden then shifted to the defendants to prove that their actions were "a result of the adoption and enforcement of reasonable rules regarding the responsibilities of every member toward the union." Local 519 and Joint Council 87 now argue that, while this Mt. Healthy instruction may have been proper in a first amendment case, it should not have been given in a § 411 case. Black counters that the district court was correct in looking to analogous Mt. Healthy principles to frame its jury instructions in this case.
 
 
 40
 We review jury instructions as a whole to determine whether they adequately inform the jury of the relevant considerations and provide a basis in law for aiding the jury in reaching its decision. Kitchen v. Chippewa Valley Schools, 825 F.2d 1004, 1010-11 (6th Cir.1987). A judgment can be reversed if the instructions, viewed as a whole, were confusing, misleading, or prejudicial. Beard v. Norwegian Caribbean Lines, 900 F.2d 71, 72-73 (6th Cir.1990). In this case, the district court gave the following instruction:
 
 
 41
 ... Plaintiff must prove each of the following propositions.
 
 
 42
 Number one, that his conduct was an exercise of free speech as defined and protected by the [LMRDA].
 
 
 43
 Number two, that he must prove that defendant took actions against him in substantial part because of this exercise of his rights under the [LMRDA].
 
 
 44
 Number three, he must prove that he was damaged and suffered an injury, as a proximate result of the actions of the defendant.
 
 
 45
 Now, the Defendant raises the Defense that its actions in question were the result of adopting an enforcement of reasonable rules which they had a right to promulgate under the [LMRDA]. The reasonable rules regarding the responsibility of every member toward the organization, as an institution, and to his refraining from conduct that would interfere with the performance of the union's legal and contractual obligations. Now, it's lawful for a union to discipline a member for a violation of a union's reasonable rules. A union may reasonably regulate speech and assembly which is part of the pattern of conduct designed to destroy the union and interfere with the performance of its legal obligations. If you find that the defendant was reasonably justified in taking these actions that the union took, your verdict must be for the defendant. That is an affirmative defense on which the defendant must bear the burden of proof in this case. The defendant had to prove by a preponderance of the evidence that what they [sic] did was a result of the adoption and enforcement of reasonable rules regarding responsibilities of every member toward the union.
 
 
 46
 This instruction clearly sets out the plaintiff's burden of proving his prima facie case and also ably describes the defendants' duty regarding the establishment of their affirmative defense. More importantly, the instruction correctly describes the respective burdens of proof under § 411(a)(2).
 
 
 47
 In Kuebler v. Cleveland Lithographers & Photoengravers Union Local 24-P, 473 F.2d 359 (6th Cir.1973), the court considered an action brought by a union member against the union for disciplining the member for conduct that the member claimed was protected by § 411(a)(2). In ruling for the union member, the court stated:
 
 
 48
 It is our conclusion that Appellant [the union member] made out a prima facie case of unlawful acts by the Union and that the Union failed in its burden to go forward with proof to justify its disciplinary actions against its member as being within the limiting provisions of Section 411(a)(2) concerning the continuing right of a union to have reasonable rules with respect to the responsibility of union members toward the organization as an institution; and to members not engaging in conduct that would interfere with the union's performance of its legal or contractual obligations.
 
 
 49
 Id. at 363. In this Circuit, we have long recognized the allocation of burdens of proof set out in the district court's instruction in this case.
 
 
 50
 In addition, other circuits considering this issue have adopted a burden-shifting approach even less favorable to the defendants. For instance, in Bradford v. Textile Workers Local 1093, 563 F.2d 1138, 1143 (4th Cir.1977), the court stated that under § 411(a)(2) a plaintiff need only prove that protected speech was "a" cause of adverse union action against him, and is not required to prove that it was a "primary" cause. In Petramale, 736 F.2d at 18, the Second Circuit held that it is enough that protected speech be one of the reasons for the discipline imposed, even if the union can prove that it would have imposed discipline in absence of the speech. In short, we find that the district court's instruction was proper, and we affirm its use.
 
 IV
 
 51
 Next, we address the issue of whether the district court erred in denying the defendants' motion for JNOV, despite its proper employment of a de novo standard of review and its proper jury instructions. Local 519 and Joint Council 87 both argue that there was not enough evidence to support the jury's verdict against them in this case. They further contend that the evidence was insufficient to support the jury's damage award.
 
 
 52
 We review a motion for JNOV under the same standard used by the district court. Marsh v. Arn, 937 F.2d 1056, 1060 (6th Cir.1991). The standard of review is as follows:
 
 
 53
 In determining whether the evidence is sufficient, the trial court may neither weigh the evidence, pass on the credibility of witnesses nor substitute its judgment for that of the jury. Rather, the evidence must be viewed in the light most favorable to the party against whom the motion is made, drawing from that evidence all reasonable inferences in his favor. If, after thus viewing the evidence, the trial court is of the opinion that it points so strongly in favor of the movant that reasonable minds could not come to a different conclusion, then the motion should be granted.
 
 
 54
 Morelock v. NCR Corp., 586 F.2d 1096, 1104-05 (6th Cir.1978), cert. denied, 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979) (citations omitted). See also Agristor Leasing v. A.O. Smith Harvestore Products, 869 F.2d 264, 268 (6th Cir.1989).
 
 
 55
 Further, this court will not overturn a jury verdict as excessive if the verdict is within the range of proof and the jury was properly instructed. American Anodco, Inc. v. Reynolds Metals Co., 743 F.2d 417, 424 (6th Cir.1984). A damage award should not be overturned unless a court is left with the definite and firm conviction that a mistake resulting in plain injustice has been committed, or unless the award is contrary to all reason. Neyer v. United States, 845 F.2d 641, 645 (6th Cir.1988); In re Lewis, 845 F.2d 624, 635 (6th Cir.1988). A damage award may also be overturned if it is so disproportionately large as to shock the conscience. Matulin v. Village of Lodi, 862 F.2d 609, 614-15 (6th Cir.1988).
 
 
 56
 We will review the contentions of each defendant separately, because we hold that the verdict and the damage award against Local 519 should be affirmed, but that the judgment against Joint Council 87 must be reversed. We find that the evidence presented in this case, most of which is outlined in detail above, is more than sufficient to support the jury's verdict against Local 519. It is certainly true that reasonable minds could differ over whether the local's actions violated § 411(a)(2). Therefore, we cannot disturb the jury's finding.
 
 
 57
 Local 519 makes a specific argument that the jury could not have found that its use of the out-of-work book violated § 411(a)(2). First, the union argues that, as a matter of law, Black's allegations regarding the out-of-work book are not actionable under § 411(a)(2). However, such employment-related reprisals against a union member for exercising his statutory free speech rights are actionable under § 411. Murphy v. International Union of Operating Engineers, Local 18, 774 F.2d 114, 121-23 (6th Cir.1985), cert. denied, 475 U.S. 1017, 106 S.Ct. 1201, 89 L.Ed.2d 315 (1986). Second, Local 519 contends that even if this claim is actionable, Black did not present evidence sufficient to support it. Again, we reject this contention and hold that the jury's verdict against Local 519 was supported by sufficient evidence. There was testimony by Black and his son that they were both called to the heavy labor job within ten minutes of each other despite the fact that their names were far apart on the priority list in the out-of-work book. In addition, there was testimony that the union president who made the referral knew of Black's physical condition and misrepresented the nature of the job to Black. While the defendants submitted contrary evidence, the jury chose to credit Black's evidence. We cannot disturb on appeal a jury verdict supported by sufficient evidence.
 
 
 58
 Further, we hold that the jury's damage award against Local 519 cannot be overturned. In addition to the other evidence in the case, the jury was presented with two opposing expert medical opinions regarding the extent of Black's damages. The jury's decision to credit the testimony of Black's witnesses cannot be disturbed on appeal. The damage award was within the range of the proof and the jury was properly instructed in this case. Further, this jury award does not shock the conscience nor is it contrary to all reason. No mistake resulting in plain injustice has been made. We affirm the damage award against Local 519.
 
 
 59
 However, the jury's verdict against Joint Council 87 is not supported by sufficient evidence and it cannot stand. Joint Council 87 is an intermediate Teamster governing body one step above the local union in the Teamsters hierarchy. The Joint Council is composed of seven delegates from each of thirteen local unions throughout Tennessee, Mississippi and Northern Alabama. The executive Board of Joint Council 87 is composed of seven individuals elected by the full Joint Council. At the time of Black's hearing, none of the members of the Joint Council 87 Executive Board was a member of Local 519.
 
 
 60
 The Joint Council Board was charged with the responsibility of hearing and deciding the charges brought against Black and the other picketers by Local 519. The Joint Council found that Black had violated two provisions of the Teamsters Constitution. There were no allegations that the Joint Council's decision was biased or that its decision violated the due process guarantees of the LMRDA. The Council's decision against Black is not so facially unreasonable on the facts as to suggest that the Council was clearly biased against Black. In fact, the Joint Council's decision was affirmed by the Teamsters' General Executive Board. In addition, the district court found it necessary to hold a trial on the truth of Black's claims, indicating that their validity might legitimately be disputed by a union reviewing body. There appears to be no evidence against the Joint Council other than its decision in this matter. The mere fact that the Council rendered a decision adverse to Black is not in itself sufficient evidence to support a § 411(a)(2) claim. Since the verdict against Joint Council 87 is not supported by sufficient evidence, we reverse the judgment rendered against the Joint Council.V
 
 
 61
 Finally, we address Black's contention that the district court erred when it denied his motion for attorney's fees. We review a district court's denial of attorney's fees for abuse of discretion. Tarter v. Raybuck, 742 F.2d 977, 986 (6th Cir.1984), cert. denied, 470 U.S. 1051, 105 S.Ct. 1749, 84 L.Ed.2d 814 (1985).
 
 
 62
 The district court began by stating the general rule that in the United States a prevailing party may not ordinarily recover attorney's fees in the absence of a statute or an enforceable contract providing for a fee award. Shimman v. International Union of Operating Engineers, Inc., 744 F.2d 1226, 1229 (6th Cir.1984), cert. denied, 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985). The court then addressed the "bad faith" exception to this general rule and found that the defendants did not act in bad faith in pursuing or carrying out this litigation. The court went on to address the "common benefit" exception to the American Rule. The common benefit exception allows recovery of fees in cases where a plaintiff successfully maintains a suit, usually on behalf of a class, that benefits others in the same manner as himself. The district court held that this case did not fall under the common benefit exception. Any damages awarded in this case would benefit only Black. The district court ruled that although Black claimed that his suit helped to rid the union of corruption and restore democracy, such "incidental benefits" do not justify a fee award. The court found that the incidental benefits did not operate to impose the burden of litigation in proportion to the benefits received.
 
 
 63
 We hold that the district court properly analyzed this issue and did not abuse its discretion in denying Black's motion for attorney's fees.
 
 VI
 
 64
 To summarize, we AFFIRM the jury's verdict and damage award against Local 519. However, we REVERSE and VACATE the jury's verdict and damage award against Joint Council 87. Finally, we AFFIRM the district court's denial of Black's motion for attorney's fees.