52 F.3d 326
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Thomas J. SIMPSON, Sr., Plaintiff-Appellee,
v.
David WHITE, Defendant-Appellant,
City of Loretto, Tennessee; John T. Odem; Johnny F.
Cheatwood; County of Lawrence, Tennessee, Defendants.
 No. 93-6583.
 United States Court of Appeals, Sixth Circuit.
 April 11, 1995.
 
 Before: MILBURN and NORRIS, Circuit Judges; and MILES,* District Judge.
 MILBURN, Circuit Judge.
 
 
 1
 Defendant David White, a City of Loretto, Tennessee, police officer appeals the district court's judgments for damages and attorneys' fees awarded to plaintiff Thomas J. Simpson, Sr. in this civil rights action brought under 42 U.S.C. Sec. 1983 and arising from plaintiff's arrest for contempt of court. On appeal, the issues are (1) whether the district court erred in finding that defendant was not entitled to qualified immunity, (2) whether the district court erred in denying defendant's motion for judgment notwithstanding the verdict or for a new trial because defendant had probable cause to arrest plaintiff, (3) whether the district court improperly instructed the jury, (4) whether the district court erred in denying defendant's motion for remittitur, and (5) whether the district court erred in granting plaintiff's request for attorneys' fees without first holding an oral hearing, and whether the amount of the fee award was excessive. For the reasons that follow, we reverse and remand.
 
 I.
 A.
 
 2
 On March 16, 1992, plaintiff Thomas J. Simpson, Sr. filed a complaint against defendants David White; the City of Loretto, Tennessee; John T. Odem; Johnny F. Cheatwood; and Lawrence County, Tennessee. The complaint alleged that plaintiff's Fourth Amendment rights had been violated when he was unlawfully arrested for contempt of court in violation of 42 U.S.C. Sec. 1983. On October 6, 1992, defendant White filed a motion for summary judgment on the grounds that (1) he was entitled to qualified immunity, and (2) probable cause existed to arrest plaintiff Simpson on other charges which could have been brought against him, such as breach of the peace, assault, domestic violence, or disturbing the peace. On February 1, 1993, the district court denied White's motion.[1]
 
 
 3
 A jury trial commenced on August 17, 1993. Defendant White moved for a directed verdict at the end of plaintiff's evidence and again at the close of all evidence on the bases of qualified immunity and probable cause. The district court denied defendant's motions, but granted a directed verdict to plaintiff on the issue of qualified immunity, finding that defendant White was not entitled to that defense as a matter of law.
 
 
 4
 On August 19, 1993, a jury verdict was returned for plaintiff in the amount of $40,000. Defendant filed a motion for judgment notwithstanding the verdict ("J.N.O.V.") or a new trial or remittitur on August 27, 1993.[2] On October 15, 1993, plaintiff filed a motion for attorneys' fees under 42 U.S.C. Sec. 1988. Defendant filed objections to the fees submitted by plaintiff and requested oral argument on the issue. On November 3, 1993, the district court granted plaintiff's motion for attorneys' fees in the amount of $35,018.76 without holding a hearing on the issue. The district court denied defendant's motion for judgment notwithstanding the verdict or a new trial or remittitur on November 3, 1993.
 
 B.
 
 5
 The facts testified to at the trial of plaintiff Simpson's action are as follows. On March 18, 1991, at approximately 11:00 p.m., defendant White of the Loretto, Tennessee Police Department was instructed to proceed to Quik Mart, a convenience store in Loretto, Tennessee, to investigate a domestic dispute. At the Quik Mart, defendant White was joined by Deputy John T. Odem of the Lawrence County, Tennessee Sheriff's Department and off-duty Officer Bobby Joe Killen of the Loretto Police Department. Inside the store, the police officers were approached by Mrs. Sherri Simpson,[3] who appeared distraught. Mrs. Simpson informed the officers that her husband, plaintiff Thomas J. Simpson, Sr., was in her house with her children and showed the officers a restraining order that prohibited her husband from "threatening or harassing [sic] [Mrs. Simpson] in any manner or doing her physical bodily harm or from coming about [Mrs. Simpson's] residence except for the purpose of child visitation pending the further orders of this Court." J.A. 372.[4] Mrs. Simpson asked the officers to make her husband leave her house. Although disputed by Mrs. Simpson, defendant White and Odem testified that Mrs. Simpson also told them, outside of Officer Killen's presence, that her husband was drunk and had threatened her with a knife.[5]
 
 
 6
 Officer Killen testified that he informed defendant White and Odem that plaintiff Simpson could not be arrested for violating the restraining order without an order of the court, but defendant White denied having heard this. Defendant White testified that he read the restraining order to Sergeant Johnny Frank Cheatwood of the Lawrence County Sheriff's Department over the radio in the patrol car. Defendant White and Odem then followed Mrs. Simpson to her house on Vine Circle in Loretto, Tennessee, and, as they approached the house, they observed that all the lights in the house were out, and they could hear children crying. Defendant White testified that Mrs. Simpson was scared and asked defendant White and Odem to enter the house first and that when the officers confronted plaintiff Simpson, he appeared drunk and upset. Defendant White further testified that plaintiff Simpson began to argue with Mrs. Simpson about a telephone call that plaintiff Simpson had received from a man who wished to see Mrs. Simpson and that plaintiff Simpson also told defendant White that Mrs. Simpson had posed for pornographic photographs. Defendant White also testified that while in the house, he saw a knife lying on the kitchen counter; he picked up the knife and showed it to Deputy Odem, but defendant White did not take the knife into police custody.
 
 
 7
 Plaintiff Simpson presented a different version of the facts. He testified that he lived and worked in Jackson, Tennessee, and went to Loretto on the weekends to visit his children. According to plaintiff Simpson, he arrived at the Simpson home in the afternoon of March 18, 1991, entered the house with a key that he retained with Mrs. Simpson's knowledge, and began to prepare dinner for the children. Plaintiff Simpson testified that Mrs. Simpson dropped the children off around 4:00 p.m. and did not return until 10:00 p.m. However, Mrs. Simpson testified that she and the children did not return to Loretto from a visit to her family in Alabama until 10:00 that evening. Plaintiff Simpson also testified that he and his wife had an argument and that she left the house. Plaintiff Simpson denied being drunk or threatening Mrs. Simpson with a knife.
 
 
 8
 Defendant White, a graduate of the Tennessee Law Enforcement Training Academy, decided to arrest plaintiff Simpson and let the magistrate determine what charges should be brought against Simpson. At jail, Sergeant Cheatwood informed defendant White that if the restraining order was valid, then Simpson was in contempt of court, but Sergeant Cheatwood did not tell defendant White to charge Simpson with contempt of court. Defendant White prepared an arrest report before the magistrate arrived. The arrest report listed the charge as contempt of court and described the details of the arrest, including the basis for probable cause, as follows:
 
 
 9
 On Mon 18th of March approximately 11:15 p.m., I PTL David White was dispatched to Quik Mart to talk to Sherri Simpson. When I arrived at Quik Mart, Deputy Tracy Odem was there also. Mrs. Simpson showed us a Restraining Order she had on Tom Simpson and it stated that he could not come around except on visitation days. She said he was at her house at the present time and had been drinking. We asked her if this was his visitation day and she said no. We then followed her over to 230 Vine Circle and went inside her residence with her at her request. I talked to Mr. Simpson who was at this residence and then transported to the county jail.
 
 
 10
 J.A. 370-71. Magistrate Leon Clayton testified that after he discussed that evening's events with defendant White and plaintiff Simpson, he determined that plaintiff Simpson should be charged with contempt of court.
 
 
 11
 Upon being confined in jail, plaintiff Simpson called his employer to inform him that he could not report to work the next day because he had been incarcerated. Simpson was required to dress in an orange jail uniform and was placed in the "drunk tank." There were three other persons in the cell, and they were drunk and vomiting. The cell was brightly lit, had one unenclosed toilet, and had only a concrete ledge on which to sit. Simpson remained in this cell from approximately 1:00 a.m. until 7:00 a.m., at which time he was transferred to a larger cell that contained 12 to 15 people. Simpson stayed in that cell until he was released about two hours later. Plaintiff Simpson testified that he felt embarrassed and humiliated by this experience. Upon plaintiff Simpson's release, a Loretto police officer drove Simpson home. Plaintiff Simpson testified that he then went to work and received a telephone call from defendant White, who apologized to Simpson and his employer for arresting him and asked Simpson not to sue. The contempt of court charge was subsequently dropped and no other charges were brought against plaintiff Simpson. This timely appeal followed.
 
 II.
 A.
 
 12
 Defendant White argues that the district court erred by denying his motion for directed verdict and granting plaintiff's motion for directed verdict on the issue of qualified immunity.[6] The standard of review for the grant or denial of a motion for directed verdict is "whether there was sufficient evidence presented to raise a material issue of fact for the jury." Nida v. Plant Protection Ass'n Nat'l, 7 F.3d 522, 525 (6th Cir.1993) (quoting O'Neill v. Kiledjian, 511 F.2d 511, 513 (6th Cir.1975)). "As applied in this context, 'sufficient evidence' is such that, when viewed in the light of those inferences most favorable to the nonmovant, there is either a complete absence of proof on the issues or no controverted issues of fact upon which reasonable men could differ." Id. (citations omitted). Defendant argues that he is entitled to qualified immunity because a reasonable officer could misunderstand Tennessee law regarding his authority to arrest a person for contempt for violating a restraining order.
 
 
 13
 "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have know." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). We have described the analytical structure for addressing the applicability of the qualified immunity defense in any given case as two-fold, consisting of both a legal defense and a factual determination. Centanni v. Eight Unknown Officers, 15 F.3d 587, 589 (6th Cir.), cert. denied, 114 S.Ct. 2740 (1994).
 
 
 14
 The threshold issue is whether a constitutional right has been violated. If so, ... a plaintiff must show that the law regarding this right was "clearly established" at the time that the constitutional violation occurred. "Objective legal reasonableness" is the touchstone of this determination. That is, for a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." Thus, this standard demands that the "right must be sufficiently particularized to put potential defendants on notice that their conduct probably is unlawful."
 
 
 15
 Id. (citations omitted).
 
 
 16
 At the time of plaintiff's arrest, it was clearly established in Tennessee that a person could not be arrested for contempt of court for violating a restraining order without an order of the court. Tennessee Rule of Civil Procedure ("Tenn.R.Civ.P.") 65.06. It was also clearly established that this unauthorized arrest violates the Fourth Amendment right to be free from unreasonable searches and seizures.
 
 
 17
 Defendant asserts that although this right was clearly established, an objectively reasonable officer "could be confused about a contempt charge under Rule 65...." Appellant's Brief at 37. However, the record reflects that Officers Odem, Killen, and Cheatwood all testified that they knew that they could not arrest someone for contempt of court for violating a restraining order without a warrant. Furthermore, Officer Killen testified that he explained this to defendant. Therefore, we conclude that the district court correctly determined that defendant was not entitled to qualified immunity on the basis that a reasonable police officer would have misunderstood the law.
 
 B.
 
 18
 Defendant White argues that the district court erred in denying his motion for J.N.O.V. or for a new trial because the evidence showed that although plaintiff was arrested for contempt of court, defendant had probable cause to arrest plaintiff for another charge, such as breaching the peace, domestic violence, assault, or disturbing the peace. We review a district court's grant or denial of a motion for J.N.O.V. under the same standard used by the district court. Black v. Ryder/P.I.E. Nationwide, Inc., 970 F.2d 1461, 1470 (6th Cir.1992). The standard of review is:
 
 
 19
 "In determining whether the evidence is sufficient, the trial court may neither weigh the evidence, pass on the credibility of witnesses nor substitute its judgment for that of the jury. Rather, the evidence must be viewed in the light most favorable to the party against whom the motion is made, drawing from that evidence all reasonable inferences in his favor. If, after thus viewing the evidence, the trial court is of the opinion that it points so strongly in favor of the movant that reasonable minds could not come to a different conclusion, then the motion should be granted."
 
 
 20
 Id. (quoting Morelock v. NCR Corp., 586 F.2d 1096, 1104-05 (6th Cir.1978), cert denied, 441 U.S. 906 (1979) (citations omitted)).
 
 
 21
 We review a district court's denial of a motion for a new trial for an abuse of discretion.
 
 
 22
 When ruling upon a motion for a new trial based upon this ground [insufficiency of the evidence], the district court must compare the opposing proofs, weigh the evidence, and set aside the verdict only if it determines that the verdict is against the clear weight of the evidence. The motion should be denied if the verdict is one which could reasonably have been reached, and "[t]he verdict is not unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable."
 
 
 23
 United States v. L.E. Cooke Co., 991 F.2d 336, 343 (6th Cir.1993) (citations omitted).
 
 
 24
 Several other circuits have held that when a police officer arrests a person for a charge for which there is no probable cause, the existence of probable cause for a related offense excuses the lack of probable cause for the offense charged.[7] In Pfannstiel v. City of Marion, 918 F.2d 1178 (5th Cir.1990), the Fifth Circuit explained that "[e]ven if there was not probable cause to arrest the plaintiff for the crime charged, proof of probable cause to arrest the plaintiff for a related offense is also a defense." Pfannstiel, 918 F.2d at 1183. Similarly, the Seventh Circuit has stated that
 
 
 25
 "[w]hile an arresting officer's subjective knowledge of facts sufficient to constitute probable cause is central to evaluation of the propriety of an arrest, we do not believe that the officer's view of the legal basis for the arrest is important. Under the principles of Harlow v. Fitzgerald and the fourth amendment, an objective standard applies where the parties present alternative legal justifications for an arrest. The issue is whether a reasonably competent officer, with knowledge of the facts actually known by the arresting officer, would have concluded that probable cause existed to arrest for the offense offered as justification."
 
 
 26
 Biddle, 992 F.2d at 676 (quoting Richardson v. Bonds, 860 F.2d 1427, 1430-31 (7th Cir.1988)). However, the offense offered as justification for the arrest must be "in some fashion related" to the offense charged. Gassner, 864 F.2d at 398. In Gassner, the court noted that the requirement that the offenses be related serves the dual purpose of preventing police officers from justifying "what from the outset may have been actually sham or fraudulent arrests on the basis of ex post facto justifications that turn out to be valid" and eliminating the incentive for "officers to 'overcharge' in the hope that at least one charge would stand up in a later criminal or civil proceeding." Id.
 
 
 27
 In this case, defendant asserts that he had probable cause to arrest plaintiff for breaching the peace. In addition, defendant argues that he also "could have brought [charges for] assault, disturbing the peace or domestic violence against [plaintiff]." Appellant's Brief at 35. Given that the offenses defendant offers as justification for the arrest are based on conduct prohibited by the restraining order, we conclude that these offenses are sufficiently related to the charged offense of contempt of court for violating a restraining order.[8] In this case, the facts supporting a finding of probable cause for breaching the peace, assault, domestic violence, or disturbing the peace are in sharp dispute. Thus, the district court submitted the issue of probable cause to the jury. See Adams v. Metiva, 31 F.3d 375, 386 (6th Cir.1994).
 
 
 28
 Defendant argues that "the jury and Court below drew the wrong conclusions from the undisputed facts" regarding his defense that he had probable cause to arrest plaintiff for another charge. Appellant's Brief at 29. However, we do not reach defendant's challenge to the sufficiency of the evidence supporting the jury's finding that he did not have probable cause to support plaintiff's arrest because, as discussed below, the jury was improperly instructed on the defense of probable cause.
 
 C.
 
 29
 Defendant argues that the district court erred in denying his motion for a new trial because the jury was improperly instructed. However, there is no indication on the record that defendant objected to the district court's jury instructions.[9] This conclusion is buttressed by the district court's treatment of defendant's motion for new trial based on improper jury instructions. In the district court's memorandum opinion denying defendant's motion, the district court reviewed the jury instructions for "clear error." J.A. 69. Pursuant to Fed.R.Civ.P. 51, "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Thus, we have held that "[d]efense counsel's failure to comply with ... Rule 51 results in a waiver of the objection advanced on appeal, and the jury verdict can be reversed only for plain error." Preferred Rx, Inc. v. American Prescription Plan, Inc., 1995 WL 44188, * 10 (6th Cir. Feb. 7, 1995). In Ivey v. Wilson, 832 F.2d 950 (6th Cir.1987), we explained that " 'the federal courts have recognized a narrow exception to the general prohibition of Rule 51 ... where the error was "obvious and prejudicial" and required action by the reviewing court "in the interests of justice." ' " Ivey, 832 F.2d at 955 (quoting Batesole v. Stratford, 505 F.2d 804, 808 (6th Cir.1974) (citations omitted)).
 
 
 30
 First, defendant argues that the district court erred in failing to instruct the jury on the meaning of a "breach of the peace threatened in the officer's presence" as a justification for a warrantless arrest. Defendant asserts that this instruction was necessary for the jury to properly understand his defense that he had probable cause to arrest plaintiff for another charge.
 
 
 31
 In this case, the district court instructed the jury that, under defendant's theory of the case, "defendant contends that he lawfully arrested the plaintiff, even though the plaintiff was charged with the wrong offense, and that he did not deprive the plaintiff of any constitutional rights." Jury Instructions, Tr.Vol. 1, p. 147. The district court also gave the following instructions:
 
 
 32
 The law, with respect to "the bounds of the defendant's lawful authority," is very complicated and you should give it your close attention.
 
 
 33
 First, I instruct you that some arrests made without warrants are within "the bounds of lawful authority." For example, in some instances, an officer may arrest a person without a warrant if the arresting officer has "probable cause." The test of "probable cause" is whether the facts and circumstances within the arresting officer's knowledge, at the time of the arrest, would have been sufficient to convince a reasonable person that the person being arrested either had committed a public offense, or threatened to breach the peace in the presence of the officer.
 
 
 34
 However, I must also instruct you that some arrests made without warrants are beyond "the bounds of lawful authority." In other words, there are instances where "probable cause" is not a sufficient ground for arrest.
 
 
 35
 A police officer may not arrest a person, without a warrant on the grounds of "probable cause," for criminal contempt. In order to arrest someone for criminal contempt, a police officer must have an order of arrest.
 
 
 36
 * * *
 
 
 37
 Defense: If you find that the plaintiff has proved his claim, you must then consider the defendant's defense. The defendant argues that he had probable cause to arrest the plaintiff for some offense.
 
 
 38
 Jury Instructions, Tr.Vol. 1, pp. 150-54 (emphasis added). Thus, the district court instructed the jury that they were entitled to consider defendant's defense that he had probable cause to arrest plaintiff for another offense but failed to adequately instruct the jury on the definition of the offense offered as justification for the arrest, i.e., breach of the peace, so that the jury would have a framework on which to measure the facts to determine whether probable cause did, in fact, exist for this offense.
 
 
 39
 Defendant requested that the jury be instructed on the meaning of a "breach of the peace threatened in the officer's presence."[10] The Supreme Court of Tennessee has explained that the term breach of the peace "is generic and embraces many acts which are indictable as separate offenses." Reichman, 188 S.W. at 601. See Davenport v. Chrysler Credit Corp., 818 S.W.2d 23, 28 (Tenn.Ct.App.1991); Cantwell v. State of Connecticut, 310 U.S. 296, 308 (1940). In Reichman, the court further explained that there are two distinct types of breaches of the peace. The first group includes offenses against individuals while the second group includes offenses against the public at large or the state. Reichman, 188 S.W. at 601-02. In relation to offenses against individuals, the term "peace" is defined as " 'that individual sense of security which every [person] feels so necessary to his [or her] comfort, and for which all governments are instituted.' " Davenport, 818 S.W.2d at 29 (quoting Reichman, 188 S.W. at 601). In addition, "[o]ffenses against individuals ... must be accompanied by violence or a threat of violence in order to be considered a breach of the peace." Davenport, 818 S.W.2d at 29. See Reichman, 188 S.W. at 602.
 
 
 40
 As earlier stated, defendant presented evidence at trial that Mrs. Simpson showed defendant a restraining order prohibiting plaintiff from going to her house without permission and told defendant that plaintiff was in fact at her house, that he was drunk, and that he had threatened her with a knife. Additionally, defendant testified that Mrs. Simpson asked him to remove her husband from her house because she was afraid to return to her home. Furthermore, defendant presented evidence that upon arriving at Mrs. Simpson's house, he observed that plaintiff had been drinking, was upset, and continued to argue with Mrs. Simpson. Moreover, defendant testified that he saw a knife in the kitchen of the house. From this evidence, the jury could have concluded that defendant had probable cause to arrest plaintiff for breaching the peace. Therefore, we conclude that the district court committed plain error in failing to instruct the jury on the meaning of a breach of the peace.[11]
 
 
 41
 On appeal, defendant also argues that he had probable cause to arrest plaintiff for disturbing the peace, domestic violence, and assault. However, defendant did not request that the jury be instructed on these offenses at trial, and defendant did not object to the jury instructions given. Thus, pursuant to Fed.R.Civ.P. 51, defendant has waived these issues on appeal. Preferred Rx, 1995 WL 44188 at * 10. Accordingly, we conclude that the district court did not commit plain error in failing to instruct the jury on these offenses.
 
 
 42
 Defendant also argues that the district court erred by refusing to instruct the jury that plaintiff must show that defendant was "deliberately indifferent" to plaintiff's constitutional rights. However, we have primarily applied the "deliberate indifference" standard to cases in which a prisoner claims that state officials were deliberately indifferent to his serious needs in violation of his Eighth Amendment rights. In these cases, we have explained that a state official's mere negligence does not violate the Due Process Clause of the Fourteenth Amendment, but if the official's lack of due care rises to the level of "deliberate indifference," then the plaintiff has a cause of action under 42 U.S.C. Sec. 1983. See Brooks v. Celeste, 39 F.3d 125 (6th Cir.1994); Weeks v. Chaboudy, 984 F.2d 185 (6th Cir.1993); Walker v. Norris, 917 F.2d 1449 (6th Cir.1990). In this case, defendant did not argue below that his unauthorized arrest of plaintiff for contempt of court was mere negligence. Therefore, we conclude that the district court did not commit plain error in refusing to instruct the jury that they must find that defendant was deliberately indifferent to plaintiff's constitutional rights.
 
 
 43
 Next, defendant argues that the district court erred by refusing to instruct the jury that if defendant had not taken any action when Mrs. Simpson requested his help, and Mrs. Simpson was later injured or killed due to defendant's inaction, then defendant could have been exposed to a 42 U.S.C. Sec. 1983 action from Mrs. Simpson or her estate. This instruction is based on defendant's hypothetical inaction when, in this case, defendant did respond to Mrs. Simpson's request for help. Moreover, Mrs. Simpson's request for assistance did not authorize defendant to violate another's constitutional rights. Therefore, we conclude that this instruction would confuse and mislead the jury, and it was not plain error for the district court to refuse to give it to the jury.
 
 
 44
 Finally, defendant asserts that the district court erred by refusing to instruct the jury that plaintiff's innocence of the charge contained in the arrest warrant, while relevant to a state tort claim of false imprisonment, is largely irrelevant to a Sec. 1983 claim of deprivation of liberty without due process of the law because the Constitution does not guarantee that only the guilty will be arrested. In this case, plaintiff did not assert a state law claim and thus, there was no need to tell the jury the difference between the 42 U.S.C. Sec. 1983 claim brought by plaintiff and such a state law claim. Furthermore, defendant's requested instruction is misleading because this case is brought upon the premise that plaintiff was arrested for criminal contempt of court, for which defendant had no authority to arrest. Thus, the question of plaintiff's guilt or innocence of this charge is not at issue. Therefore, we conclude that the district court correctly refused to give the jury this instruction. However, we reiterate that we have held that the district court committed plain error in failing to instruct the jury regarding the alternative charge defendant offered to show probable cause for plaintiff's arrest.
 
 III.
 
 45
 For the reasons stated above, the judgments of the district court for damages and attorneys' fees are REVERSED and REMANDED for a new trial.
 
 
 
 *
 Honorable Wendell A. Miles, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 The district court granted summary judgment to the City of Loretto, Tennessee, and Lawrence County, Tennessee, on February 1, 1993. Defendants Odem and Cheatwood were later dismissed from the suit after a settlement was reached between the parties
 
 
 [2]
 Although defendant referred to the motions at issue as motions for "directed verdict" and "judgment notwithstanding the verdict," Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 50(a) was amended, effective December 1, 1991, to rename these motions "judgment as a matter of law" and "renewed motion for judgment as a matter of law," respectively. For purposes of this appeal, we will refer to these motions in the same manner as defendant
 
 
 [3]
 Plaintiff Thomas J. Simpson, Sr. and Sherri Simpson were later divorced in May 1991. Sherri Simpson, now Sherri Carlton, subsequently remarried. For purposes of this appeal, she will be referred to as Mrs. Simpson
 
 
 [4]
 Mrs. Simpson obtained the restraining order when she filed for divorce on January 9, 1991
 
 
 [5]
 At the time of trial, Mrs. Simpson resided more than 100 miles from the court and exercised her right not to appear. Thus, portions of her discovery deposition were read at trial
 
 
 [6]
 We note that defendant's notice of appeal does not state that he is challenging the district court's denial of his motion for directed verdict on the issue of qualified immunity, although he argues this point in his brief. However, defendant's motion for judgment notwithstanding the verdict or a new trial preserved the issue raised in defendant's motion for directed verdict, i.e., qualified immunity. Boburka v. Adcock, 979 F.2d 424, 426 (6th Cir.1992), cert. denied, 113 S.Ct. 2933 (1993). Furthermore, plaintiff does not argue that defendant waived this issue on appeal
 
 
 [7]
 We have recently recognized this defense in an unpublished decision. See Hopkins v. City of Westland, No. 93-1096, 1994 WL 118116 (6th Cir. April 4, 1994). We note that some circuits treat this defense as part of qualified immunity, see Biddle v. Martin, 992 F.2d 673, 676 (7th Cir.1993); Gassner v. City of Garland, 864 F.2d 394, 398 (5th Cir.1989), while other circuits treat "related charge" probable cause as a separate defense to a Sec. 1983 claim. See Foster v. Metropolitan Airports Comm'n, 914 F.2d 1076, 1079 (8th Cir.1990). We need not resolve this issue in this case because even if the district court had treated the probable cause defense as part of qualified immunity, it still would have been necessary to submit the issue to the jury because the facts supporting probable cause for any offense were in dispute
 
 
 [8]
 Plaintiff argues that defendant is not entitled to this defense because defendant admitted that he was unsure as to what offense he should charge plaintiff at the time of plaintiff's arrest and that he planned to let the magistrate determine the proper offense. However, other circuits have held that "[a police officer's] subjective reason for making the arrest is irrelevant to a fourth amendment challenge to the arrest." Foster, 914 F.2d at 1079. See also United States v. Rambo, 789 F.2d 1289, 1294 (8th Cir.1986) ("It is immaterial that at the time of the entry and arrest the officers did not have in mind the specific charge upon which the arrest can be justified ..."); Gassner, 864 F.2d at 398 ("A police officer need not actually have had the crime for which probable cause existed in mind at the time of the arrest ..."). Moreover, in Trejo v. Perez, 693 F.2d 482 (5th Cir.1982), the court held that "charging an offense is not a prerequisite to its use in justification of a warrantless arrest." Trejo, 693 F.2d at 485
 
 
 [9]
 We note that the record reflects that the district court advised counsel for both parties that it would conduct a charge hearing. J.A. 368. However, if such a hearing was held, it was not transcribed in the record
 
 
 [10]
 Defendant requested, relying on the decisions in State ex rel. Thompson v. Reichman, 188 S.W. 225, 230 (Tenn.1916) and State ex rel. Thompson v. Reichman, 188 S.W. 597, 601 (Tenn.1916), that the jury be instructed that the Supreme Court of Tennessee has explained the meaning of "a breach of the peace" as follows:
 An arrest may lawfully be made when no misdemeanor has in fact been committed if it is necessary to prevent a threatened breach of the peace. Whatever is a violation of public order or tends to the disturbance of public peace or order is a breach of the peace.
 It must be remembered that the term "breach of the peace" is not used to describe any specific crime or offense. It is generic and embraces many acts which are indictable as separate offenses. It includes all unlawful acts and acts of public indecorum which disturb, or tend to disturb, public peace or good order. It has been succinctly described as "a criminal act of the sort which disturbs the public repose."
 It seems to be clear, then, that any act which is unlawful, which disturbs or tends to disturb peace and good order, is within the accepted definition of breach of the peace and the "peace" in this connection has also come to have a fixed meaning. It means "the tranquility enjoyed by the citizens of a municipality or community where good order reigns among its members" or "that invisible sense of security which every man or woman feels so necessary to his or her comfort, and for which all governments are instituted."
 J.A. 24-25.
 
 
 [11]
 We note, however, that defendant's requested instruction is misleading because it focuses on breaches of the peace that are offenses against the public at large and are thus inapplicable to the present case. Therefore, on remand, the district court should limit its instruction on the meaning of a breach of the peace as it applies to offenses against an individual