Boyd L. **CLINE**, Plaintiff and Counterclaim Defendant–Appellee,

v.

**UNITED STATES** of America, Defendant and Counterclaim Plaintiff–Appellant.

No. 92–1139.

United States Court of Appeals, Sixth Circuit.

Argued March 11, 1993.

Decided June 29, 1993.

---

Keith M. Aretha and Neill T. Riddell (argued and briefed), Eames, Wilcox, Mastej, Bryant, Swift & Riddell, Detroit, MI, for Boyd L. Cline, plaintiff-appellee.

Francis L. Zebot, Asst. U.S. Atty., Office of the U.S. Atty., Detroit, MI; Stephen T. Lyons, Trial Atty., U.S. Dept. of Justice, Tax Div.; Gary R. Allen, Acting Chief (briefed), Richard Farber, Kevin M. Brown and Sally Schornstheimer (argued), U.S. Dept. of Justice, Appellate Section Tax Div., Washington, D.C., for the U.S., defendant-appellant.

Before: JONES and GUY, Circuit Judges; and LIVELY, Senior Circuit Judge.

LIVELY, Senior Circuit Judge.

In this case the Internal Revenue Service (IRS) assessed three officers of a corporation for the amount of employee income taxes and the employee portion of social security taxes

that the corporation had withheld from employees' wages but had failed to pay over to the government. Section 6672 of the Internal Revenue Code of 1954 (the Code), 26 U.S.C. § 6672, imposes a "penalty" equal in amount to the unremitted taxes upon responsible persons who willfully fail "to collect . . ., or truthfully account for and pay over" any tax imposed by the Code.

The three corporate officers paid a portion of the assessed amounts and sued the United States for refunds. The government then filed counterclaims against each of the plaintiffs, demanding payment of the total assessment against each. The three cases were consolidated for trial by a jury. In response to interrogatories the jury found that two of the plaintiffs were responsible persons within the court's instructions and that they had acted willfully in failing to account for and pay over the withheld taxes. This appeal does not concern these jury findings.

The jury rendered a different verdict in Cline's case. The assessment against Cline was for the amount of taxes withheld in the third and fourth quarters of 1984 and the first quarter of 1985. The jury found that Cline was not a responsible person for the third and fourth quarters of 1984, but was a responsible person for the first quarter of 1985. However, the jury found further that Cline did not act willfully in failing to pay over the taxes withheld in that quarter. On the basis of the verdict, the district court entered judgment ordering the government to refund to Cline the amount he had paid, with interest, and dismissing the counterclaim for the entire assessed amount.

The government did not contest the finding that Cline was not a responsible person during the last two quarters of 1984. It filed a motion for judgment notwithstanding the verdict (JNOV), however, arguing the evidence showed that Cline's failure to pay the taxes or cause them to be paid after he became a responsible person who knew of the delinquencies established his willfulness as a matter of law. The district court denied the motion, concluding that "there was sufficient evidence to raise a question of fact regarding Mr. Cline's willfulness."

The government appeals from the judgment and the denial of its JNOV motion.

## I.

The three officers were employed by Michigan Transportation Company (MTC). MTC was a trucking company that handled specialized loads, such as volatile chemicals. Ralph Posnik was the President and sole shareholder of MTC. Cline was hired by MTC in 1968 and became Vice-President of Maintenance in 1974 or 1975. In 1977, he became Executive Vice-President of the company. As Executive Vice-President, Cline was second in command at MTC. Cline's duties were supervising operation of the garage and maintenance of the equipment, ordering supplies and equipment, negotiating maintenance contracts and hiring and firing maintenance personnel. He testified that his authority was limited to maintenance operations. This involved "seeing to it that the equipment was ready and rolling down the highway." Cline reviewed bills for equipment and supplies that he had ordered, initialed them and sent them to the "front office" for payment. Cline testified that his initialling an invoice was never intended or understood as a direction to another to make payment. Edward Bedikian was MTC's controller from 1978 to January 24, 1985.

Posnik, Bedikian and Cline were the three individuals assessed by the government. Testimony indicated that Bedikian was primarily responsible for financial and tax matters at MTC and reported directly to Posnik. There was considerable evidence that Posnik was the final authority as to any important decisions, and no one else at MTC possessed independent decisionmaking authority. There was conflicting testimony whether only Posnik or whether Cline and Bedikian also had decisionmaking authority as to which bills would be paid. Bedikian was not replaced following his resignation in January 1985, and several MTC employees other than Cline took over his duties.

In the early 1980s, MTC began having financial difficulties and stopped remitting the taxes it had withheld from its employees. The IRS and MTC entered an installment agreement through which delinquent with-

holding taxes for 1983 were eventually paid. MTC however continued to fall behind on the payment of some of the taxes for the third and fourth quarters of 1984, the first and second quarters of 1985 and the first quarter of 1986. Cline first became aware of these tax liabilities in June of 1984. The company's financial difficulties, including the delinquent taxes were discussed at weekly luncheon meetings attended by Posnik, Cline, Bedikian and McCleod, MTC's Vice–President of Traffic and Sales. In addition, Cline saw financial statements of MTC that were prepared quarterly and which reflected the unpaid withholding tax liabilities. Cline testified that he knew the unpaid taxes on the financial statements indicated that "something had to be paid to the IRS." Cline also sat in on some meetings with the company's attorney where the obligation for taxes was discussed.

During 1984 and 1985, all checks issued by MTC were signed using a mechanical check-signing machine. Until February 22, 1985, the only person authorized to sign checks on MTC's accounts was Shirley Posnik, Ralph Posnik's wife. Shirley Posnik was removed as signatory, and Ralph Posnik, Cline and McCleod were made signatories on February 22, 1985. Cline testified he was not permitted to write a check without authorization from Posnik; Posnik testified Cline could have written a check without Posnik's authorization. Cline further testified that he never utilized his authority, but Posnik testified that either Bedikian or Cline must have paid some of the bills for supplies or utilities because "the fuel was running" and "the tires were moving." The check-writing machine was kept under lock and key controlled by Doris Wagner, Posnik's secretary.

Around February 22, 1985, Cline became aware that company officials were meeting with the IRS regarding MTC's liabilities, and he attended one meeting with the IRS. MTC continued to pay net wages to its employees and continued paying some of its bills until it filed for bankruptcy on May 31, 1985. There was substantial testimony that MTC was operating "hand-to-mouth" in late 1984 and early 1985 with Posnik insisting upon meeting payroll first and then, as cash came to MTC in the daily mail, paying those creditors who were pressing MTC the most. During the time Cline knew MTC was not paying withholding taxes, Cline continued to order fuel and other supplies for the garage facilities, some on a COD basis. He testified, however, that he could not order even a single tire without Posnik's approval.

In March of 1985, at Posnik's direction Cline went to Rally Transport, another company owned by Posnik, to reorganize and shut down the company. He retained his duties at MTC during this time, but received his paycheck from Rally. On May 21, 1985, Cline suffered a heart attack and never returned to work at Rally or MTC.

## II.

### A.

Sections 3102 and 3402 of the Code, 26 U.S.C. §§ 3102 and 3402, require employers to withhold social security and income taxes imposed on employees from the employees' wages. The withheld taxes are part of the wages of an employee and are held in trust for the benefit of the United States. 26 U.S.C. § 7501 ("a special fund in trust for the United States"); *Slodov v. United States*, 436 U.S. 238, 243, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978). Thus, those funds may not be used as working capital for the business. *Id.; McGlothin v. United States*, 720 F.2d 6, 8 (6th Cir.1983). An employee whose taxes are withheld but not actually paid over to the government is credited with payment. *Slodov*, 436 U.S. at 243, 98 S.Ct. at 1783. Therefore, the government has recourse against the persons responsible for remitting the taxes to the IRS. *Id.* Section 6672 provides that when a "responsible person," the person charged with collecting, accounting for and paying over withholding taxes, "willfully" fails to do so, he is liable for a penalty equal to the amount of the unpaid taxes. *McGlothin*, 720 F.2d at 8. If an assessment is made against a corporate officer, the burden of proof by a preponderance of the evidence is on the officer to show that he was not a responsible person or that he did not act willfully. *Calderone v. United States*, 799 F.2d 254, 258 (6th Cir.1986) (quot-

ing *Sinder v. United States*, 655 F.2d 729, 731 (6th Cir.1981)).

### B.

We are concerned only with the issue of willfulness. The government did not appeal from the jury's finding that Cline was not a responsible party with respect to the last two quarters of 1984. Because the final judgment was not adverse to Cline, he could not appeal from the finding that he was a responsible party; the finding of no willfulness relieved him of liability.

### (1)

The government has cited cases from a number of circuits dealing with the willfulness issue. Because this court has written on this subject on several occasions, we look first to our own decisions for guidance. As the government points out, we stated in *Gephart v. United States*, 818 F.2d 469, 475 (6th Cir.1987), that "[w]illfulness is present if the responsible person had knowledge of the tax delinquency and knowingly failed to rectify it when there were available funds to pay the government." From this statement the government argues the uncontradicted facts of this case required a holding that Cline acted willfully as a matter of law. As a responsible person, the government contends, Cline had a duty to see that corporate funds were not used for any other purpose so long as the delinquent taxes were unpaid. The government argues that the record is clear—MTC continued to generate funds during the first quarter of 1985, and other accounts such as those for wages, supplies and parts were paid.

It is not necessary, the government asserts, for the record to show that Cline actually paid these other accounts, or caused them to be paid. No evil motive is required, the government maintains, because willfulness is established by a "voluntary, conscious and intentional" decision to not pay the withheld taxes or "reckless disregard" by a responsible person to whether the taxes are paid or not. Given Cline's knowledge that the taxes were unpaid, gained from attending weekly management meetings and seeing financial statements, the fact that he continued to order supplies and to accept his own salary demonstrated at least reckless disregard. Thus, the government argues, it was entitled to judgment for the amount of unremitted taxes for the first quarter of 1985, or at least for those taxes collected from February 22 to the end of the quarter.

The government also argues that it was entitled to judgment for unremitted taxes for the last two quarters of 1984. The Supreme Court held in *Slodov* that if a person first assumes control of a corporation at a time when trust fund taxes remain unpaid, that person is responsible for the existing delinquency to the extent the corporation has funds available with which to satisfy the tax obligation. 436 U.S. at 259–60, 98 S.Ct. at 1791–92. Although Cline was an officer of MTC prior to the first quarter of 1985, the government would apply the *Slodov* rationale equating the date that Cline became a responsible person with the date the taxpayer in *Slodov* assumed control of the corporation.

The *Slodov* issue was not addressed at trial, because the government contended that Cline was a responsible person throughout the entire three quarters in litigation. The jury's verdict requires a determination of whether there were unencumbered corporate funds available to pay the taxes at the time Cline became a responsible party. Although Cline has the burden of proof on this issue, inasmuch as it was not raised at trial, the government concedes that a remand will be necessary to take proof on the availability of such funds at that time. The government also agrees that the critical time is February 22, 1985, the date on which Cline was first authorized to sign MTC checks. Since there was no change in Cline's authority or duties prior to that date, both parties assume that the addition of his name to the list of authorized signatures formed the basis of the jury's finding that he became a responsible person during the first quarter of 1985.

### (2)

Cline argues that there was ample proof from which the jury could have found that he neither used funds that had been withheld, nor caused them to be used for purposes

other than payment of taxes. He never wrote or signed a check for MTC. His initialling invoices, he claims, was only an acknowledgement that the materials had been ordered and received, not a direction that the invoices be paid. Someone else always decided whom to pay, and in what order to pay them. Cline points to the evidence from himself and other MTC employees that Posnik controlled the corporate funds and designated the order of payment of debts and liabilities. The evidence is uncontradicted that Cline was not involved in these decisions.

Cline asserts that the government is seeking a ruling that would make a person found to be responsible absolutely liable under § 6672, contrary to settled interpretation of the section that two separate requirements—responsibility and willfulness—must be met to establish individual liability. This is also contrary to the Supreme Court's holding in *Slodov*, 436 U.S. at 254, 98 S.Ct. at 1788, that Congress did not intend to impose liability without personal fault. Willfulness is a factual inquiry, Cline argues, and the Sixth Circuit cases cited by the government all involved actual payment to others rather than to the IRS or a delegation to someone else with directions to pay others. See *Collins v. United States*, 848 F.2d 740, 741 (6th Cir. 1988) (taxpayer acknowledged knowing of the unremitted taxes and paying others); *Gephart*, 818 F.2d at 471–72 (taxpayer signed most of the checks himself, never sent check for withheld taxes to government after ordering them written, continued to pay net wages); *Calderone*, 799 F.2d at 259 (taxpayer wrote 40 checks to other creditors with knowledge that withheld taxes had not been paid).

Cline argues, first, that no remand is necessary because the record shows without contradiction that MTC had no unencumbered funds with which to pay the taxes at the time he became a responsible party. In the alternative, he requests a limited remand to the district court on the question of unencumbered funds.

### III.

The requirements and standards for a district court considering a motion for JNOV and an appellate court in reviewing the decision on such a motion are clear. The court recently restated them in *Ratliff v. Wellington Exempted Village Schools Bd. of Ed.*, 820 F.2d 792, 795 (6th Cir.1987):

> The issue raised by a motion for a judgment notwithstanding the verdict is whether there is sufficient evidence to raise a question of fact for the jury. In determining whether the evidence is sufficient, the trial court may neither weigh the evidence, pass on the credibility of witnesses nor substitute its judgment for that of the jury. Rather, the evidence must be viewed in the light most favorable to the party against whom the motion is made, drawing from that evidence all reasonable inferences in his favor. If, after thus viewing the evidence, the trial court is of the opinion that it points so strongly in favor of the movant that reasonable minds could not come to a different conclusion, then the motion should be granted. An appellate court when reviewing the trial court's decision is bound by the same standard. *Morelock v. NCR Corp*, 586 F.2d 1096, 1104–05 (6th Cir.1978), *cert. denied*, 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979).

We look first at the issue of Cline's liability for taxes withheld and not paid over during the first quarter of 1985. Our review is *de novo*. *Hill v. Marshall*, 962 F.2d 1209, 1217 (6th Cir.1992).

### A.

The question is whether the evidence of Cline's willfulness is so clear and one-sided that the government was entitled to judgment as a matter of law. From our previous recitation of facts, it is clear that there were many sharp disputes among the witnesses concerning the status, duties, and authority of Cline and the other officers of MTC.

■ There is no dispute concerning Cline's knowledge. He testified that he knew of the tax delinquencies, but was not involved in any way in the decision to pay other creditors instead of the IRS. As a responsible person Cline finds no shelter from liability in the fact that Posnik determined that the

taxes should not be paid. In *Gephart*, we adopted the holding of the Court of Appeals for the Eleventh Circuit on this question. 818 F.2d at 475 (citing *Roth v. United States*, 779 F.2d 1567 (11th Cir.1986) ("otherwise responsible person does not lose that status even if instructed by superior officer not to pay taxes")). The jury settled the responsible person question. We turn now to the question of willfulness.

This court made the following statement in *Gephart*:

> Willfulness is present if the responsible person had knowledge of the tax delinquency and knowingly failed to rectify it when there were available funds to pay the government.

818 F.2d at 475.

Even though Cline neither paid other creditors nor caused them to be paid while the withheld taxes remained unpaid, a literal reading of the *Gephart* language would lead to the conclusion that he was willful. Nevertheless, under the facts of *Gephart*, the quoted statement is dicta. The roles of Gephart and Cline were quite different. Gephart signed most of the checks for payment to creditors of his employer as well as the net payroll of the employees. Further, as general manager, he represented the corporation in dealings with creditors and suppliers. 818 F.2d at 472. In other words, he occupied the dominant role in the financial affairs of the corporation. Cline, on the other hand, was primarily responsible for keeping MTC's trucks rolling. Although he might have had organizational authority over Bedikian, the financial officer of MTC, the jury could have accepted his testimony that he had no role in the decisions of Posnik and Bedikian concerning whom to pay and that he never wrote a check or ordered one written.

We have found no case where a corporate officer or employee so far removed as Cline from financial control and decisions of his employer has been held to be willful under § 6672 for mere failure to act.

As we pointed out earlier, the responsible persons in *Collins*, *Gephart*, and *Calderone* actually paid other obligations of the corporation while failing to pay withheld taxes that

they knew were delinquent. The cases from other circuits reveal the same pattern. See, *e.g.*, *Hochstein v. United States*, 900 F.2d 543 (2d Cir.1990) (controller responsible for payroll and taxes paid net wages), *cert. denied*, —— U.S. ——, 112 S.Ct. 2967, 119 L.Ed.2d 587 (1992); *Gustin v. IRS*, 876 F.2d 485 (5th Cir.1989) (president of corporation with control over funds paid other creditors); *Olsen v. United States*, 952 F.2d 236 (8th Cir.1991) (president, CEO and shareholder paid other creditors); *Teel v. United States*, 529 F.2d 903 (9th Cir.1976) (three shareholders used funds to pay for new merchandise); *Thibodeau v. United States*, 828 F.2d 1499 (11th Cir.1987) (president paid other creditors to keep company running); *Williams v. United States*, 931 F.2d 805 (chairman of board, president and chief operating officer signed checks to pay other obligations), *opinion supplemented on rehearing*, 939 F.2d 915 (11th Cir.1991). Even in cases where the record is not clear that a responsible person signed checks yet was found to have acted willfully, that person held a dominant position in financial matters and failed to investigate and correct the failure to pay taxes. See *e.g.*, *Honey v. United States*, 963 F.2d 1083 (8th Cir.) (vice-president, secretary and treasurer either acting with another officer paid creditors or at least knew the other officer alone was paying creditors), *cert. denied*, —— U.S. ——, 113 S.Ct. 676, 121 L.Ed.2d 598 (1992); *Denbo v. United States*, 988 F.2d 1029 (10th Cir.1993) (director and secretary/treasurer with signatory authority knew of unpaid taxes and met regularly with other officers to discuss financial problems).

## B.

The jury instructions on willfulness given by the district court further enforce our view that the government is not entitled to JNOV with respect to the first quarter of 1985. The district court defined "willfully" as follows:

> For the purpose of this case, the term "wilfully," means only that the act of failing to pay over the taxes was voluntarily, consciously and intentionally done. If the responsible person consciously, voluntarily, and intentionally used the funds which

were withheld, or caused them to be used for purposes other than payment of taxes, he is deemed to have acted wilfully.

Under this instruction the jury could find that Cline acted willfully only if he performed some act: "consciously, voluntarily, and intentionally used the funds ... or caused them to be used...." The jury was not instructed that Cline could be found to have acted willfully for merely failing to pay or failing to cause someone else to pay while the withheld funds were being used for some purpose other than payment of taxes.

The government's only objection to this portion of the instruction was stated by counsel as follows:

> On the instruction, and the two sentences dealing with the definition of willfulness, Your Honor has failed to give the additional instruction that we requested, and that is that the voluntary conscious and intentional act of preferring creditors other than the United States, we had requested the instruction state, in essence, that that means that if you pay creditors other than the United States when you know the taxes are due and owing, but unpaid, that is willful. That was not given, nor was a reckless disregard instruction given, which we requested, and we would object to the failure to give those.

Even this objection was not pursued; on appeal the government makes no issue about jury instructions.

As our earlier discussion of the testimony indicates, Cline steadfastly contended that he had no connection with the payment of MTC's obligations or with causing them to be paid. The only evidence to the contrary was Posnik's testimony that somebody must have been paying bills because "the fuel was running" and "the tires were moving." Viewing the evidence most favorably to Cline, the district court had no choice but to deny the government's JNOV motion.

### IV.

We reject the government's contention that even though the jury found Cline not to be a responsible party in 1984 and not to have acted willfully in 1985, there is some basis for holding him liable for unremitted taxes in 1984. This position might be tenable if the government had pursued its objections to the jury instructions that required an affirmative act by Cline to establish willfulness. However, the government abandoned its request for a different instruction, neither relying upon it in post-judgment motions in the district court nor on appeal to this court.

The jury, following instructions that have not been relied upon as a basis for finding reversible error, found that Cline was neither a responsible person during the last two quarters of 1984 nor one who acted willfully in the first quarter of 1985. As previously noted, in order to establish an individual's liability under § 6672, the government must prove two elements: that the individual was a responsible person and that he or she acted willfully in failing to remit trust funds. *McGlothin*, 720 F.2d at 8. In this case, the government established neither element with respect to the last two quarters of 1984 and only one element—Cline's status as a responsible person—with respect to the first quarter of 1985. Without a determination that Cline was both a responsible person and one who acted willfully, the question of whether there were unencumbered funds available to pay past trust fund liabilities on February 22, 1985 is immaterial.

The judgment of the district court is affirmed.