Charles MORENO, Plaintiff,

v.

**CONSOLIDATED RAIL CORPORATION,** Defendant.

No. 92–CV–6550–DT.

United States District Court, E.D. Michigan, Southern Division.

Feb. 2, 1994.

---

Michael D.P. Burwell, Bloomfield Hills, MI, for plaintiff.

Robert C. Ludolph, Detroit, MI, for defendant.

*OPINION*

DUGGAN, District Judge.

Plaintiff had been employed by defendant or its predecessors for more than 30 years in a variety of capacities. In 1991, plaintiff held the position of car inspector supervisor and, in general, he was responsible for assuring the movement of freight along the main line and protecting the delivery of freight in defendant's and its customers' industrial yards. In November, 1991, plaintiff underwent surgery for a carotid artery blockage to reduce the risk of stroke. Subsequent to his return to work, plaintiff's medical records relating to his November hospitalization were forwarded to defendant's Medical Director. Defendant became aware that plaintiff suffered from a diabetic condition when the Medical Director reviewed plaintiff's hospital summary.

On December 19, 1991, the Medical Director issued a medical department report which qualified plaintiff to return to work with certain stated restrictions. In response to the medical department report, management personnel of defendant agreed that plaintiff should be removed from services because of those restrictions. Plaintiff was therefore terminated from his position. On November 10, 1992, plaintiff filed a complaint alleging that defendant had discriminated against him on the basis of his handicap, to wit: diabetic and vascular conditions, when defendant determined that he was not qualified to perform his duties and terminated plaintiff. Plaintiff sought relief under the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("§ 504") and 42 U.S.C. § 1981.

Defendant filed a motion for summary judgment seeking a dismissal of the action

against it claiming that it was not a recipient of federal financial assistance under the Rehabilitation Act of 1973, 29 U.S.C. 794 ("§ 504") and thus was not subject to the provisions of the Act. On August 23, 1993, this Court issued an Opinion and Order rejecting defendant's contention and ruling that defendant was a recipient of federal financial assistance and thus was subject to the Act.[1]

This matter was tried before a jury from August 18, 1993, through August 23, 1993. This Court denied defendant's motion for a directed verdict at the close of plaintiff's proofs, and upon conclusion of all evidence. On August 23, 1993, defendant moved for a directed verdict on the issue of punitive damages, which this Court took under advisement. On August 23, 1993, the jury awarded plaintiff $62,500 in back pay, $125,000 in pain and suffering and emotional distress, and $1,312,572 in punitive damages. Judgment was entered on August 24, 1993.

On September 8, 1993, defendant filed a motion for directed verdict, judgment notwithstanding the verdict, new trial, and remittitur to which plaintiff has responded.[2] A hearing on this matter was held on January 13, 1994.

## I. STANDARD OF REVIEW

### A. MOTION FOR JUDGMENT AS A MATTER OF LAW

■ The standard of review is the same whether it arises in the procedural context as a motion for judgment as a matter of law or a renewed motion for judgment as a matter of law. See Fed.R.Civ.P. 50, 1991 Notes of Advisory Committee; 9 Wright & Miller, *Federal Practice and Procedure:* Civil § 2524. A motion for judgment as a matter of law ("JNOV") raises the issue of whether sufficient evidence was presented to raise a question of fact for the jury to decide. *Cline v. United States,* 997 F.2d 191, 196 (6th Cir.1993) (citation omitted).

■ The standard of review is clear:

[i]n determining whether the evidence is sufficient, the trial court may neither weigh the evidence, pass on the credibility of witnesses nor substitute its judgment for that of the jury. Rather, the evidence must be viewed in the light most favorable to the party against whom the motion is made, drawing from that evidence all reasonable inferences in his favor. If, after thus viewing the evidence, the trial court is of the opinion that it points so strongly in favor of the movant that reasonable minds could not come to a different conclusion, then the motion should be granted.

*Cline,* 997 F.2d at 196 (citations omitted). A renewed motion for judgment as a matter of law is appropriate when the evidence produced at trial fails to establish an element necessary to plaintiff's cause of action. *Douglass v. Eaton Corp.,* 956 F.2d 1339, 1343 (6th Cir.1992). Thus, while the district court has the duty to intervene in appropriate cases, the verdict should not be disturbed simply because different inferences and conclusions could have been drawn or because other results are more reasonable. Further, a jury verdict should not be overturned as excessive if the verdict is within the range of proof and the jury was properly instructed. *Black v. Ryder/P.I.E. Nationwide, Inc.,* 970 F.2d 1461, 1470 (6th Cir.1992). As the *Black* court instructs:

[a] damage award should not be overturned unless a court is left with the definite and firm conviction that a mistake resulting in plain injustice has been committed, or unless the award is contrary to all reason.... A damage award may also be overturned if it is so disproportionately large as to shock the conscience.

*Id.* at 1470 (internal citations omitted); *Matulin v. Lodi,* 862 F.2d 609, 614–15 (6th Cir.1988).

### B. NEW TRIAL

■ Defendant alternatively argues that the jury's verdict is clearly against the

1. On February 2, 1994, this Court entered an Opinion and Order denying defendant's motion for reconsideration on this issue.

2. The parties refer to the respective motions as "directed verdict" and "JNOV." Pursuant to the 1991 amendments to Fed.R.Civ.P. 50, these motions have been renamed "motion for a judgment as a matter of law" and "renewed motion for a judgment as a matter of law." For clarity and consistency, this Court will refer to defendant's motions using the new terminology.

weight of the evidence. The standard to which a movant is held pursuant to Fed. R.Civ.P. 59 is less onerous than the standard for a judgment as a matter of law under Rule 50(b). The decision to grant or deny a new trial pursuant to Rule 59 is a procedural matter which lies within the broad discretion of the district court. *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 191, 66 L.Ed.2d 193 (1980) (per curiam); *United States v. L.E. Cooke Co., Inc.*, 991 F.2d 336, 343 (6th Cir.1993) (citation omitted). Rule 59 states in pertinent part that:

[a] new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States. . . .

Rule 59(a).

■■■ When a party bases its motion for a new trial upon the ground that a verdict is against the weight of the evidence, a trial court "must compare the opposing proofs, weight the evidence, and set aside the verdict only if it determines that the verdict is against the clear weight of the evidence." *L.E. Cooke Co.*, 991 F.2d at 343 (citation omitted). If the verdict is one which could reasonably have been reached, a court may not set aside a jury verdict simply because the jury could have drawn different inferences or conclusions, or because the court believes that another result is more reasonable. *L.E. Cooke Co.*, 991 F.2d at 343; *Woodbridge v. Dahlberg*, 954 F.2d 1231, 1234 (6th Cir.1992) ("the verdict is not unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable."). Accordingly, a trial court will grant a motion for a new trial only if the trier of fact's verdict is one that could not reasonably have been reached. *Id.*

## II. DISCUSSION

### A. PRIMA FACIE CASE—§ 504 OF THE REHABILITATION ACT

■■■ Plaintiff's complaint was filed pursuant to 29 U.S.C. § 794 (Section 504 of the Rehabilitation Act of 1973). To establish a prima facie case of handicap discrimination under Section 504 of the Rehabilitation Act, plaintiff must establish:

1. That he is a "handicapped" person under the Act;

2. That he is "otherwise qualified" for the position sought;

3. That he was excluded from the position "solely by reason of his handicap"; and

4. That the position was part of a program or activity which receives federal assistance.

*See e.g. Pesterfield v. Tennessee Valley Authority*, 941 F.2d 437, 441 (6th Cir.1991).

Defendant's first contention is that it is not an employer within the meaning of § 504. Defendant's argument was entertained and rejected by this Court both on defendant's motion for summary judgment, and defendant's motion for reconsideration. Defendant has not cited anything in its renewed objection which persuades this Court to vacate its earlier ruling on this issue.

■■■ Second, defendant argues that plaintiff failed to establish that he was "otherwise qualified for the position sought." This Court disagrees. As fully set forth in plaintiff's brief, ample medical and lay testimony was presented at trial to support plaintiff's contention that he was qualified to carry out the essential functions of the position he held prior to defendant's decision to disqualify him. (*See* P's Brief 4–5 and portions of trial transcripts attached thereto). This Court acknowledges that there was conflicting testimony presented on this issue. Nevertheless, based upon a review of the evidence presented at trial, a jury could reasonably conclude that plaintiff was capable of performing the essential functions of his former job. The jury's verdict cannot be disturbed simply because different inferences and conclusions could have been drawn or because defendant believes that a different result is more reasonable. *Cline*, 997 F.2d at 196.

Alternatively, defendant argues that even if plaintiff is considered "otherwise qualified"

under § 504, defendant could not have reasonably accommodated plaintiff's handicap so that he could continue to function in a supervisory capacity. (D's Brief at 9). Defendant contends that the only way plaintiff could have been accommodated was to rewrite his job requirements, which would impact and possibly violate the collective bargaining rights of other employees. Accordingly, defendant concludes that it was not obligated to accommodate plaintiff. (D's Brief at 10); *Jasany v. United States Postal Serv.*, 755 F.2d 1244 (6th Cir.1985). Both plaintiff and defendant submitted evidence on their respective positions on this issue at trial. In this Court's opinion, plaintiff submitted sufficient evidence from which a jury could conclude that defendant could accommodate plaintiff without negatively impacting the collective bargaining rights of other employees.

Similarly, the Court concludes that a jury could reasonably conclude that no accommodation was necessary, or at a minimum, defendant could have merely allowed plaintiff to carry a sandwich with him to a job site so that he could eat during his regular shift. Accordingly, defendant's motion must be denied.

### *"Subsequently Discovered Evidence"*

■ Defendant argues that plaintiff "actively concealed" medical information which would have "mandated his disqualification."[3] Presumably, although defendant does not clearly set forth his position in this regard, defendant is contending that plaintiff's failure to disclose this "medical information" precludes plaintiff from recovering in this case.[4] The evidence produced at trial does not support defendant's position. The evidence introduced would not, in this Court's opinion, allow this Court to rule, as a matter of law, that the "medical assessment" to which defendant is referring, was such that it would have "mandated his disqualification." Defendant has offered no evidence nor argument to support a conclusion that plaintiff had any

duty to furnish defendant with this "medical assessment." There is no evidence that plaintiff, in fact, believed that he was physically unable to perform the duties of the job.

This Court is satisfied, from the evidence presented, that the jury could conclude that plaintiff was in fact able to perform the duties of his job. Plaintiff testified that, in fact, he was not only physically capable of performing all of the job functions, he was performing all of the functions of his job, without any complaint from management. Further, plaintiff's claim that he was able to perform his job functions was, in this Court's opinion, supported by: the testimony given by Dr. Baghdoian at trial; the report of Dr. Baghdoian dated September 6, 1991, which indicated that as of September 25, 1991, plaintiff was able to work with no restrictions (Exhibit 14, Exhibit 138, p. A32); the report of Dr. Weaver, Conrail's designated physician, in which Dr. Weaver found plaintiff to be "qualified" as of September 31, 1991 (Exhibit 13); the report of Vincob Sanghi, M.D. dated December 27, 1991 indicating that plaintiff could return to work on December 30, 1991 "without restriction" (Exhibit 7); the report of N. Gupta, M.D. dated December 30, 1991, indicating that "Mr. Moreno has no restrictions for work because of heart disease" (Exhibit 6); and the report of Dr. Wakefield of December 26, 1991 (Exhibit 5). Additional testimony supporting plaintiff's position came from defendant's Medical Director, Dr. O. Hawryluk, who testified that he wrote a letter to Mr. Moreno in December, 1991, and filled out an MD40 showing Mr. Moreno as "qualified." (Exhibits 2 and 3). Dr. Hawryluk testified that at that time, Mr. Moreno "was medically qualified to perform his usual duties." (Tr. Vol. II, pp. 27–30).

Furthermore, the instructions given to the jury clearly allowed the jury to make a factual determination, based on the evidence presented, on the issue of whether plaintiff was

---

**3.** Defendant is referring to the report of Dr. Michael Baghdoian dated November 4, 1991 (Exhibit 138, p. A34) in which Dr. Bagdhoian stated "I think his limitations should be no bending, no stooping, no lifting and no climbing ladders, etc."

**4.** The Court "assumes" this is defendant's argument because of defendant's citation to *Dotson v. U.S. Postal Serv.*, 977 F.2d 976 (6th Cir.1992).

"an otherwise qualified person." The jury was instructed that they must find that apart from the "handicap", i.e. plaintiff's diabetic condition, that plaintiff could perform the essential functions of his job.[5]

In this Court's opinion, there was ample evidence from which the jury could conclude that plaintiff's physical condition did not prevent him from performing all the tasks of his job.

## B. JUDICIAL ESTOPPEL

Defendant contends that plaintiff should have been judicially estopped from claiming that he was ready, willing, and able to work because plaintiff applied for, was granted and accepted, a monthly disability annuity from the Railroad Retirement Board. (D's Brief at 10). Defendant maintains that the plaintiff represented that he had certain disabilities in order to receive disability benefits, and cannot represent that he is not disabled for purposes of the current action.

■ The doctrine of judicial estoppel prevents a party "who has successfully and unequivocally asserted a position in a prior proceeding ... from asserting an inconsistent position in a subsequent proceeding." *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir.1982); *Morawa v. Consolidated Rail Corp.*, 685 F.Supp. 619 (E.D.Mich. 1986). The Sixth Circuit recognizes that because this doctrine precludes a party from asserting a contradictory position without examining the truth of either position, it should be "applied with caution to avoid impinging on the truth-seeking function of the court." *Teledyne Indust., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir.1990). Although this Circuit explicitly extends judicial estoppel to full adversarial proceedings before a non-judicial administrative proceeding, it has not extended the doctrine to an uncontested non-judicial proceeding. *Edwards*, 690 F.2d at 598–600 & n. 3. The *Edwards* Court explicitly found that an administrative decision to award benefits without resorting to a full

adversary proceeding before an administrative board constitutes a decision to settle a contested claim. *Id.* at 599–600. Accordingly, the court concluded that "such an administrative settlement [without resort to litigation] does not amount to a judicial or quasi-judicial endorsement" of the party's initial position. *Id.* at 600. Sixth Circuit precedent holds that because the requisite success in the initial assertion of the inconsistent position is not present when parties settle, application of judicial estoppel is not appropriate. *Teledyne*, 911 F.2d at 1219; *Edwards*, 690 F.2d at 600.

■ In the instant case, judicial estoppel is not warranted. It is undisputed that the Railroad Retirement Board's decision to award monthly disability benefits was made without a resort to a full adversary proceeding before the Board. Based on *Edwards, supra*, this Court concludes that the Railroad Retirement Board's action constitutes an administrative settlement. *Edwards*, 690 F.2d at 599–600. Accordingly, this Court cannot apply the doctrine of judicial estoppel to plaintiff's "initial position" before the Railroad Retirement Board. Moreover, even if this Court did not construe the Board's action as a settlement of a contested claim, judicial estoppel is not warranted in this case. In his application, plaintiff did not maintain that he was unable to perform his current position, or any other position. Rather, he states that Dr. O. Hawryluk, defendant's Medical Director, disqualified plaintiff from working by imposing working restriction upon him. Specifically he asserted that:

I have performed my required duties, without criticizm [sic] or loss of time from work, despite my medical problems for all the past years, now they tell me I can't work and are depriving me of gainfull [sic] employment and earnings.

(Tr. Ex. 137). Although plaintiff acknowledged that he experienced lower back pain in certain circumstances, he did not claim that

---

**5.** Not only was the jury instructed that, in order for plaintiff to prevail, he must prove that "He is an otherwise qualified person...." (Jury Instruction 14–Attachment A). But the jury also was instructed that if they determined that

"plaintiff was disabled, that is, he was unable to perform the duties of his job, then you may not award plaintiff any compensation of loss of wages or benefits after the date you determined him to be disabled." (Attachment B)

he was incapable of working. As such, the position he maintained before the Retirement Railroad Board is not inconsistent with the position plaintiff asserted in the instant action. *See e.g. Torsky v. Avon Products, Inc.,* 707 F.Supp. 942, 946 (W.D.Mich.1988).

Defendant also contends that "If, indeed, he was physically able to work, he has failed to mitigate his damages and should be precluded from any back pay award." (D's Brief at 14). This Court rejects this argument. The jury was instructed on the issue of "mitigation of damages" (Jury Instruction No. 23–Attachment C), and in this Court's opinion, there is nothing to indicate that the jury did not follow this instruction in reaching its verdict.

### C. DAMAGE AWARD

As an initial matter, this Court notes that the parties agree that the back pay award must be reduced by the stipulated offset of $24,388. Furthermore, at oral argument, the parties conceded that it was not necessary for this Court to discuss defendant's contention that plaintiff's damage award is limited to $300,000 pursuant to 42 U.S.C. § 1981a(b)(3)(D), because plaintiff asserts that it relies solely upon § 504 of the Rehabilitation Act to support the punitive damage award, and not § 1981. (*See also* P's Brief at 20).

It is clear that a private right of action exists under § 504, and that plaintiffs are entitled to seek the "remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964." *See* 29 U.S.C. § 794a(a)(2); *Consolidated Rail Corp. v. Darrone,* 465 U.S. 624, 626, 104 S.Ct. 1248, 1250, 79 L.Ed.2d 568 (1984); *Tuck v. HCA Health Servs.,* 7 F.3d 465, 471 (6th Cir.1993). Although the Supreme Court unanimously held that monetary awards are an available remedy for statutes, like § 504, enacted pursuant to Congress' Spending Clause power, it specifically left open "the extent to which

money damages are available under § 504.". *Darrone,* 465 U.S. at 628, 104 S.Ct. at 1251.

▮ In determining the availability of the remedies sought by plaintiff, this Court applies the longstanding general rule that, absent a clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute. *See Franklin v. Gwinnett County Pub. Schools,* 503 U.S. 60, 66–71, 112 S.Ct. 1028, 1033–35, 117 L.Ed.2d 208 (1992). In conducting its analysis, this Court heeds the Supreme Court's admonition that courts must "be responsive to two countervailing considerations—the need to give effect to the statutory objectives and the desire to keep § 504 within manageable bounds." *Alexander v. Choate,* 469 U.S. 287, 299, 105 S.Ct. 712, 719, 83 L.Ed.2d 661 (1985).

#### 1. Emotional Damages

▮ This Court believes that the balance of these "powerful but countervailing interests" is satisfied by allowing a party to pursue compensatory damages, including damages for mental suffering. The starting point of this Court's analysis is the rule that prevailing parties under § 504 are entitled to the same damages available to successful parties in Title VI actions. 29 U.S.C. § 794a(a)(2). Unfortunately, the incorporation of Title VI remedies obfuscates rather than clarifies what remedies are available under § 504, because the extent to which compensatory damages are available under Title VI is similarly uncertain. *See e.g. Guardians Association v. Civil Service Com.,* 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983). Lacking clear guidance from cases construing § 504 or Title VI, the courts also look to complementary anti-discrimination legislation, such as Title VII and Title IX, for guidance.[6]

The Supreme Court's recent decision in *Franklin* supports this Court's conclusion

---

6. As this Court has noted previously, Title IX was patterned after Title VI, and the Supreme Court consistently discusses the two titles interchangeably. *See e.g. Cannon v. University of Chicago,* 441 U.S. 677, 694–95, 99 S.Ct. 1946, 1956–57, 60 L.Ed.2d 560 (1979). Indeed, the Supreme Court

states that when two statutes contain the same language and share a common purpose, it is proper to look to the interpretation of one to analyze the other. *Northcross v. Board of Education,* 412 U.S. 427, 428, 93 S.Ct. 2201, 2202, 37 L.Ed.2d 48 (1973).

that both equitable remedies and compensatory damages are available pursuant to § 504.[7] *See also, Miller v. Spicer,* 822 F.Supp. 158, 166–68 (D.Del.1993); *Kraft v. Memorial Medical Center, Inc.,* 807 F.Supp. 785, 790–92 (S.D.Ga.1992); *Doe v. District of Columbia,* 796 F.Supp. 559, 571–73 (D.D.C. 1992). The *Franklin* court held that monetary damages are an available and adequate remedy in actions brought to enforce Title IX of the Education Amendment of 1972, 20 U.S.C. §§ 1681–1688. *Franklin,* 503 U.S. at 75, 112 S.Ct. at 1038. Accordingly, *Franklin* implicitly establishes that damages available under Title IX are also available under Title VI. Further, it follows that, because Congress specifically provided that all Title VI remedies were equally available under § 504, *Franklin* also authorizes the award of compensatory damages for intentional discrimination under § 504. Indeed, the post-*Franklin* courts presented with the issue of whether compensatory damages are available in § 504 actions have viewed *Franklin* as authorizing such awards. *See e.g. Miller v. Spicer, supra; Kraft, supra; Doe, supra.*

■■■ Defendant maintains that the $125,-000 verdict for emotional damages is excessive and not supported by the record. (D's Brief at 15). This Court is satisfied that the verdict is within the range of proof, and the jury was properly instructed with respect to the standard for awarding damages for emotional distress. Defendant contends that the fact that plaintiff did not seek professional counseling, and that he eventually adjusted to retirement through his involvement in community affairs and household chores belies plaintiff's claim that he suffered any emotional distress. (D's Brief at 14–15). This Court disagrees. The record is replete with testimony to support the jury's finding. Defendant has failed to provide this Court with evidence that would leave this Court with a definite and firm conviction that the

emotional damage award was so disproportionately large as to shock the conscience. *See Black,* 970 F.2d at 1470. Furthermore, this Court is satisfied that the jury's verdict is one which could reasonably have been reached, and thus, defendant's motion is denied in its entirety.

### 2. Punitive Damages

■■■ Plaintiff also seeks to recover punitive damages under § 504. In this Court's view, punitive damages are neither necessary nor warranted to further Congress' objective "to make good the wrong done" in light of the full range of compensatory remedies that plaintiff is authorized to seek under § 504. *Franklin,* 503 U.S. at 67, 112 S.Ct. at 1033 (citation omitted). Thus, this Court concludes that it cannot imply a punitive damage remedy when Congress has given no indication that it intended to authorize such relief, and punitive damages do not appear to give effect to the statutory objectives. *See e.g. Cortes v. Board of Governors,* 766 F.Supp. 623, 626 (N.D.Ill.1991) (citing *Gelman v. Department of Education,* 544 F.Supp. 651, 653–54 (D.Colo.1982). The defendant's motion for *remittitur* of the punitive damages award is moot in light of this Court's decision with respect to the availability of punitive damages in a § 504 case.[8]

### CONCLUSION

For the reasons stated above, this Court denies defendant's motion for a renewed judgment as a matter of law pursuant to Fed.R.Civ.P. 50, and denies defendant's motion for a new trial under Fed.R.Civ.P. 59. The damage award must be modified, as agreed by the parties, to the stipulated offset of $24,388. This Court denies defendant's motion for remittitur as to the emotional damages. In light of the applicable case law, this Court concludes that plaintiff is not enti-

---

**7.** Moreover, this Court notes that when Congress amended the Rehabilitation Act in 1978, the House/Senate Conference Committee eliminated a provision which would have prohibited money damages, thereby suggesting that the Committee did not intend to prohibit money damages as a remedy. *See* H.R.Rep. 95–1780, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.Cong. & Admin.News 7312, 7375–79.

**8.** In its initial motion, defendant asked that "... The punitive award should be reduced at a minimum to $175,000." In its reply brief defendant argues that plaintiff is not entitled to *any* punitive damages.

tled to punitive damages in a § 504 action and strikes the punitive damage award in this case.

## ATTACHMENT A

### *JURY INSTRUCTION NO. 14:*

The plaintiff in this action has brought a claim under Section 504 of the Rehabilitation Act. Section 504 in relevant part provides:

No otherwise qualified individual with handicaps ... shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance....

The basic purpose of Section 504 is to insure that handicapped individuals are not denied jobs or other benefits.

In order for plaintiff to establish his claim of handicap discrimination by Conrail, he must prove by the preponderance of the evidence the following essential elements:

1. He is an otherwise qualified person with a handicap, and

2. He was disqualified from his position solely by reason of his handicap.

First you must determine whether the plaintiff can perform the essential job functions of his job, and if not, then second, could he do so with reasonable accommodation by the defendant.

This means, the burden of proof shifts to Defendant to prove by the preponderance of the evidence that plaintiff is not an otherwise qualified person. In other words, the defendant must show that plaintiff's handicap prevents him from performing an essential function of the job, and that there is no accommodation the employer could make without undue hardship that would enable the plaintiff to perform all the essential functions of his job.

To determine whether the employer has met its burden of proof on this affirmative defense as to its decision to disqualify the plaintiff, you must consider the issues of essential functions of plaintiff's job at the time of his disqualification; and, the issue of reasonable accommodation; and, the issue of undue hardship. I will explain the significance of each of these issues in turn.

## ATTACHMENT B

If you determine from a preponderance of the evidence that plaintiff was disabled, that is, he was unable to perform the duties of his job, then you may not award plaintiff any compensation for loss of wages or benefits after the date you determine him to be disabled.

## ATTACHMENT C

### *JURY INSTRUCTION NO. 23:*

The plaintiff must make every reasonable effort to minimize or reduce his damages for loss compensation by seeking employment. This is called "mitigation" of damages.

If you find that plaintiff is entitled to damages, you must reduce these damages by:

a. what plaintiff earned, and

b. what the plaintiff could have earned with reasonable effort.

during the period for which you determined that he is entitled to damages.

If you find that the plaintiff is entitled to damages, you must reduce these damages by an amount the plaintiff could reasonably earn or reasonably be expected to earn in the future.

Whether plaintiff was reasonable in not seeking or accepting particular employment is a question for you to decided, However, the plaintiff is obligated to accept an offer which is of "a like nature." In determining whether employment is of "a like nature," you may consider, for example, the type of work, the hours worked, the compensation, the job security, working conditions, and other conditions of employment.

The defendant has the burden of proving that plaintiff failed to mitigate his damages for loss of compensation.